No. 48,465

CLUB EXCHANGE CORPORATION, ATTORNEY IN FACT FOR THE AUTOMO-
BILE CLUB INTER-INSURANCE EXCHANGE, *Appellant,* v. MARY
SEARING, JOHN E. DRURY AND DELORES D. DRURY, BILL R. HART-
FORD AND JOAN K. HARTFORD, EPHRAM L. O'BANION, MARION
O'BANION AND SHARON O'BANION, EDWARD M. RIGGS, ERMA L.
RIGGS, *Appellees.*

(567 P.2d 1353)

Opinion filed July 11, 1977.

*James R. Goheen,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, argued the cause, and *Terry Fitzgerald,* of the same firm, was with him on the brief for the appellant.

*Robert V. Wells,* of Kansas City, argued the cause and was on the brief for Bill R. and Joan K. Hartford, appellees; *H. Wayne Powers,* of Overland Park, argued the cause, and *Frank Saunders, Jr.,* also of Overland Park, was with him on the

brief for Ephram L., Marion, and Sharon O'Banion, appellees; *John P. Biscanin,* of Kansas City, argued the cause and was on the brief for Mary Searing, appellee; and *David K. Duckers,* of Kansas City, was on the brief for John E. and Delores D. Drury, appellees.

The opinion of the court was delivered by

MILLER, J.: A motion to dismiss this interpleader action was sustained and attorneys' fees were awarded to defendants and taxéd against the plaintiff, Club Exchange Corporation. It appeals, challenging both rulings.

A two-car collision occurred on North 59th Street in Kansas City, Kansas, on September 12, 1974. Harry Searing, driving one of the vehicles, was killed. His wife, Mary Searing, was injured. Edward Riggs, the driver of the other vehicle, apparently escaped injury. Two of the passengers in the Riggs vehicle, John Drury and Danny Hartford, were killed; the third passenger, Ephram L. O'Banion, was injured. Club Exchange insured both vehicles and both drivers involved. Its liability policy on the Searing vehicle had limits of $50,000 for injuries sustained by any one person and a maximum of $100,000 for injuries sustained by two or more persons in any one occurrence, commonly known as $50,000/100,000 limits. The limits of the Riggs policy were $15,000/30,000.

Club Exchange investigated promptly and determined that there were numerous claims for damages in excess of the policy limits; and that the responsibility for the collision, and accordingly the liability, could not be readily resolved. Promptly, and only thirty-two days after the collision occurred, Club Exchange instituted this interpleader action. It joined as defendants the survivors of the collision and the heirs and next of kin of those who were deceased. No administrators had yet been appointed. Plaintiff alleged that it was faced with a multiplicity of claims in excess of the policy limits, and that by reason of the conflicting claims and the Kansas comparative negligence statute it was unable to determine its total liability or the share each claimant should receive. It asked the court to require the parties to submit in one hearing for decision by the court their respective claims, grant appropriate credit to the plaintiff for any payments made by it under the Kansas Automobile Reparations Act, and allow plaintiff to pay into the registry of the court the total amount of the claims against the fund. In effect it sought a determination of

its total liability and asked that it be permitted to pay that amount into court and be released from all further liability on its policies. It also sought a temporary injunction to prevent the defendants from instituting separate lawsuits.

Motions to dismiss, on the grounds that the petition was contrary to the intention of K.S.A. 60-1701, were filed; these were denied by the district judge who said:

"This type of situation seems to fit the purpose of the interpleader statute (Pan American Fire & Cas. Ins. Co. vs. Revere, 188 F. Supp. 474; Gard's Rules of Civil Procedure 110; Vernons Rules of Civil Procedure 219), and it is my opinion that the action should not be dismissed—at least at this stage of the proceedings. . . ."

Thereafter, separate lawsuits were filed in the Wyandotte District Court and those lawsuits, together with this action, were assigned to division 1. New motions to dismiss were filed, these being ". . . for the reason that said action has been improperly brought; for the reason that all claims arising out of the facts of the above case are not before the Court; (and) that said action will produce multiplicity of litigation and . . . will deny defendants' right to a trial by jury. . . ."

The trial judge, in ruling upon these motions, said:

"I think that Club Exchange Corporation filed this lawsuit in good faith, and I think it's in the best interests of the claimants, the defendants in the action to proceed in the lawsuit. . . . [I]t would be a fairly simple trial in which the Court would determine the respective liability of Ed Riggs, on the one hand, and Mr. Searing, the driver of the other car, and to determine the damages that each of the claimants had sustained. Then the Court, by a matter of computation—as is going to be necessary in all cases under the comparative negligence doctrine—would compute how much each person is to get. However, all four of the claimants say, 'No, we don't want it to go that route, we want the right to file our own case.' . . . [B]ecause the plaintiff insurance company is not the party against whom the defendants have claims, . . . I do not think the interpleader is proper. Additionally, because the injured parties are entitled to pursue one or the other or both drivers for more than his insurance coverage, I think this interpleader action should be dismissed. . . . So . . . the motions to dismiss Mr. Lysaught's interpleader action will be sustained.

"Costs will be taxed against the plaintiff. I think defense counsel are entitled to some fees for appearing and defending against that suit. . . . I will allow what I deem proper and that allowance will become part of the Court's judgment. . . ."

The principal issue before us is whether an insurance carrier, faced with multiple unliquidated tort claims in excess of the policy limits, may in good faith promptly bring an action in

interpleader against the potential claimants, despite the fact that under Kansas practice the claimants could not bring their tort claims directly against the insurer.

K.S.A. 60-222 (a) provides in applicable part that:

"Persons having claims *against the plaintiff* may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. . . ." (Emphasis supplied.)

Kansas has no "direct action" statute, and it is clear that the defendants in this action could not bring direct actions against the plaintiff for injuries sustained in the automobile collision. Once judgments were secured against the insured drivers, then such judgments could be enforced against the plaintiff. See *Rector v. Husted,* 214 Kan. 230, 519 P.2d 634.

*Macek v. Swift & Co. Employees Benefit Association,* 203 Kan. 581, 455 P.2d 521, is the only decision by this court concerning the Kansas interpleader statute. In *Macek,* we said:

". . . K.S.A. 60-222 (a) is the same as Federal Rule 22 (1), and federal decisions in point construing it are persuasive." (p. 590.)

Interpleader has been in existence for over 600 years. It originated in the common-law courts, and later was viewed as falling exclusively within the jurisdiction of the English Equity Chancellors. 7 Wright & Miller, *Federal Practice and Procedure,* Civil § 1701, pp. 351-352. Early federal decisions dealt with common law or "strict" interpleader. The first federal interpleader statute was enacted in 1917; various amendments have been enacted since that time, and the present federal interpleader statute is 28 U.S.C. § 1335, enacted in 1948. A distinction is made in the federal courts between "statutory" interpleader, authorized by 28 U.S.C. § 1335, and "rule" interpleader, authorized by rule 22 (1) F. R. Civ. P. See 7 Wright & Miller, *Federal Practice and Procedure,* Civil § 1703, p. 365. The distinctions between the two relate primarily to jurisdiction, the amount in controversy, citizenship of litigants, venue, and service of process. For the most part, these differences do not concern us. We do note, however, that K.S.A. 60-222 and rule 22, F. R. Civ. P., unlike the federal interpleader statute, 28 U.S.C. § 1335, do not specifically require that the stake be deposited with the court. The trial court, however, has authority, at any time during the proceedings, to require that the stake be deposited or an appropriate surety bond be posted with the clerk. Ordinarily this should be done prior to trial on the merits.

The United States Supreme Court in *State Farm Fire & Cas. Co. v. Tashire,* 386 U.S. 523, 18 L.Ed.2d 270, 87 S.Ct. 1199 (1967), had before it the same issue which we face here. That action arose out of a collision between a pickup truck and a Greyhound bus. Two persons were killed, and thirty-three injured. State Farm, which insured the pickup truck, brought an action in the nature of interpleader in the United States District Court for the district of Oregon. It joined as defendants the owners and drivers of both vehicles and all of the prospective claimants. It anticipated that demands would far exceed its maximum liability of $20,000, and it sought to require all the claimants to establish their claims against the driver of the pickup truck and his insurer in this single proceeding. The trial court granted a broad temporary injunction. On interlocutory appeal, the Court of Appeals for the ninth circuit reversed (363 F.2d 7). The Court of Appeals held that in states like Oregon which do not permit "direct action" suits against insurance companies until judgments are obtained against the insured, the insurer may not invoke federal interpleader. It held that mere claimants with unliquidated tort claims are not "persons having claims against the plaintiff" within the meaning of rule 22, F. R. Civ. P.

The United States Supreme Court reversed. It said:

"We do not agree with the Court of Appeals that, in the absence of a state law or contractual provision for 'direct action' suits against the insurance company, the company must wait until all persons asserting claims against its insured have reduced those claims to judgment before seeking to invoke the benefits of federal interpleader. That may have been a tenable position under (certain prior) interpleader statutes. . . . In 1948, however, in the revision of the Judicial Code, the 'may claim' language was restored. Until the decision below, *every court* confronted by the question has concluded that the 1948 revision removed whatever requirement there might previously have been that the insurance company wait until at least two claimants reduced their claims to judgments. The commentators are in accord.

"Considerations of judicial administration demonstrate the soundness of this view which, in any event, seems compelled by the language of the present statute, which is remedial and to be liberally construed. Were an insurance company required to await reduction of claims to judgment, the first claimant to obtain such a judgment or to negotiate a settlement might appropriate all or a disproportionate slice of the fund before his fellow claimants were able to establish their claims. The difficulties such a race to judgment pose for the insurer, and the unfairness which may result to some claimants, were among the principal evils the interpleader device was intended to remedy." (pp. 531-533.) (Emphasis supplied.)

We adopt the view expressed in *Tashire,* and hold that where, as here, an insurance carrier is faced with multiple unliquidated claims, far in excess of its contractual liability, then even in the absence of a "direct action" statute, interpleader is an appropriate remedy, so long as the insurer acts promptly and in good faith. K.S.A. 60-222 (*a*), like 28 U.S.C.A. § 1335 and rule 22 (1) F. R. Civ. P., uses the word "may." Probable claims are thus sufficient; it is not necessary that the insurer wait until judgments have been entered against its insured, and attempts made to enforce such judgments directly against the insurer, before invoking the interpleader procedure. In the case at hand, the trial court found that the insurer acted both promptly and in good faith. The record supports those findings.

The court faced a second issue in *Tashire*—whether the temporary injunction granted by the trial court was over-broad. The temporary injunction restrained the defendants not only from filing or prosecuting any proceeding affecting the property or obligation involved in the interpleader action, but also against State Farm and its insured; and the injunction was later broadened to include Greyhound among those who could not be sued except within the confines of the interpleader proceeding. In this regard, the court said:

"State Farm's interest in this case, which is the fulcrum of the interpleader procedure, is confined to its $20,000 fund. That interest receives full vindication when the court restrains claimants from seeking to enforce against the insurance company any judgment obtained against its insured, except in the interpleader proceeding itself. To the extent that the District Court sought to control claimants' lawsuits against the insured and other alleged tortfeasors, it exceeded the powers granted to it by the statutory scheme." (p. 535.)

We should emphasize that interpleader is a joinder device whereby all of those who claim some interest in a particular fund (the stake) may be joined in the action, and may there assert and litigate their claims against the fund. Interpleader protects the stakeholder from multiple suits, and from determining at its peril the validity and priority of disputed claims; it also protects the claimants by bringing them together in one action so that a fair and equitable distribution of the fund may be made.

Under modern interpleader, as provided by K.S.A. 60-222 (*a*), the stakeholder need not be neutral; it may deny liability, in whole or in part, according to the express terms of the statute. The requirements for "strict" interpleader no longer apply. Further,

the trial of disputed claims to the fund, such as those which involve liability or the extent of injuries and damages, may be by jury. 7 Wright & Miller, *Federal Practice and Procedure,* Civil § 1718, p. 469 *et seq.*

But interpleader does not, and restraining orders and injunctions granted by the interpleader court should not, limit the filing of lawsuits by the claimants against third-party tortfeasors or against the plaintiff's insured. As a practical matter, however, where the principal target of the claimants, and the only apparent source from which their claims may be satisfied, is the stake, all claims will no doubt be resolved in the interpleader action.

We do not here deal with the duty of the insurer to defend actions filed against its insured even though it may have deposited in the interpleader action the maximum amount for which it may be liable under its policy, nor do we deal with the duty of the insurer to settle; those questions are not before us.

We turn to the final question, that of the allowance of attorneys' fees to counsel for the defendants. Under the federal interpleader procedure, counsel fees are frequently awarded to the stakeholder and decisions dealing with such awards are plentiful (see 7 Wright & Miller, *Federal Practice and Procedure,* Civil § 1719, p. 476 *et seq.,* and 28 U.S.C.A., rule 22, notes 50-53), but we find no federal case in which counsel fees have been awarded to defendants in interpleader actions. No such fees are authorized by K.S.A. 60-222.

Appellees rely upon K.S.A. 40-256, but that statute and the cases decided thereunder are inapplicable for the reason that there has been no unjustified refusal by the insurer to pay the full amount of the loss. Club Exchange has expressed a willingness to pay, upon direction of the court, the amount for which it is liable under its policy limits. Our comparative negligence statute, together with the diverse policy limits and the unresolved and disputed questions of liability, make determination of the stake difficult. The district court did not make an order requiring payment of any amount into court, and Club Exchange has at no time refused to make such payment. Under the circumstances we conclude that the allowance of attorneys' fees to the defendants was unwarranted, and wholly unauthorized by statute.

The judgment of the trial court is reversed, and the case is remanded for proceedings consistent with this opinion.