524 S.E.2d 704

**OAK CASUALTY INSURANCE COMPANY, Plaintiff Below, Appellee,**

v.

**Constance S. LECHLITER, Tracy Lynn Harrison, Tabitha Kackley, a Minor, Amanda Kackley, a Minor, Through the Sheriff of Mineral County, Their Court–Appointed Guardian, Defendants Below.**

**Patrick Nield, Sheriff of Mineral County, Petitioner Below, Appellee,**

v.

**Tabitha Kackley and Amanda Kackley, Minors, Respondents Below, Appellants.**

No. 26208.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 3, 1999.

Decided Dec. 3, 1999.

Bradley J. Reed, Hagerstown, Maryland, Attorney for the Appellants Tabitha and Amanda Kackley.

E. Kay Fuller, Paul Burns, Martin & Seibert, L.C., Martinsburg, West Virginia, Attorney for the Appellee Oak Casualty Insurance Co.

DAVIS, Justice:

Minors who were injured in an automobile accident appeal a final decision of the Circuit Court of Mineral County. The decision was rendered in an interpleader action initiated by Oak Casualty Insurance Company for the

purpose of distributing the proceeds of an insurance policy issued to the driver of one of the automobiles involved in the collision. The final order of the circuit court is challenged insofar as it ordered the minors, through their legal guardian, to release Oak Casualty's insured from all liability resulting from the accident. We conclude that the circuit court was without authority to restrict an interpleader defendant's right to file a lawsuit against an insured tortfeasor to determine the liability of that person or entity for the underlying accident.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On May 17, 1997, Paula Kackley (hereinafter "Kackley"), along with her two minor daughters, Tabitha and Amanda (hereinafter "the minor claimants"), was in her automobile traveling west on Route 9 in Martinsburg, West Virginia. Kackley's vehicle crossed the center line and struck two eastbound vehicles. One of the east-bound vehicles was driven by Tracy Lynn Harrison, the other was driven by Constance S. Lechliter. As a result of the collision, the two eastbound drivers and Tabitha and Amanda Kackley all suffered injuries.[1] Subsequent personal injury claims submitted by the injured parties to Kackley's automobile liability insurer, Oak Casualty Insurance Company (hereinafter "Oak Casualty"), plaintiff below and appellee, exceeded the personal injury limits of the policy that had been issued to Kackley, which limits were $20,000 per person and $40,000 per occurrence.[2] Consequently, Oak Casualty filed an interpleader action pursuant to W. Va. R. Civ. P., Rule 22,[3] seeking to deposit the $40,000 personal injury limits of Kackley's policy with the Circuit Court of Mineral County. Thereafter, the injured parties, who became the defendants in the interpleader action, agreed to a division of the insurance proceeds as follows: $20,000 to Tabitha Kackley, $1,000 to Amanda Kackley, $13,000 to Ms. Lechliter and $6,000 to Ms. Harrison. Oak Casualty then sought court approval of the proposed division with respect to the minor claimants.

Prior to addressing the proposed division of the insurance proceeds, the circuit court appointed Patrick Nield, Sheriff of Mineral County, as guardian for the minor claimants. In addition, the court appointed David Webb as their guardian *ad litem.* The court then addressed the proposed division on September 24, 1998. At that time, the court instructed each interpleader defendant to assert, within fifteen days, any and all claims they had against either Oak Casualty or Paula Kackley. The court further directed counsel for the minor claimants to show cause

---

1. Tabitha Kackley sustained the most serious injuries and has accumulated nearly $75,000 in medical expenses.

2. Kackley's policy also included medical payment coverage, which has paid all medical bills submitted on behalf of Amanda Kackley, but which has been exhausted as to Tabitha Kackley's claims.

3. Rule 22 of the West Virginia Rules of Civil Procedure states:

 Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that the plaintiff is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule 20.

 W. Va.Code § 56–10–1 (1953) (Repl.Vol.1997) also addresses interpleader. We note, however, that to any extent that W. Va.Code § 56–10–1 may be in conflict with W. Va. R. Civ. P. Rule 22, it has been superseded. *See* Syl. pt. 10, *Teter v. Old Colony Co.*, 190 W.Va. 711, 441 S.E.2d 728 (1994) (" ' "Under Article VIII, Section 8 [and Section 3] of the Constitution of West Virginia (commonly known as the Judicial Reorganization Amendment), administrative rules promulgated by the Supreme Court of Appeals of West Virginia have the force and effect of statutory law and operate to supersede any law that is in conflict with them." Syl. Pt. 1, *Stern Brothers, Inc. v. McClure*, 160 W.Va. 567, 236 S.E.2d 222 (1977).' Syllabus Point 2, *Bennett v. Warner*, 179 W.Va. 742, 372 S.E.2d 920 (1988).").

why the court should not require a release of Oak Casualty and its insured, Kackley.

In response to the court's orders, counsel for the minor claimants argued that Kackley should not be released from liability because (1) she could not be a party to the interpleader action due to her interest in the controversy among the claimants, (2) Oak Casualty·did not need a release in favor of Kackley in order to withdraw from defending claims against her arising from the accident, and (3) the minor claimant's right to proceed against Kackley for their uncompensated damages should not be extinguished as Kackley could earn, gain or win funds in the future.[4] Oak Casualty filed a response that, in part, admitted Paula Kackley should not be released from liability, but indicated that any judgment against her would be non-collectible.

On November 4, 1998, the court approved the proposed distribution of the insurance funds and took up the issue of whether Oak Casualty and Kackley should be released from liability. The guardian *ad litem* for the minor claimants recommended that Kackley not be released from liability for the girls' injuries resulting from the accident. The circuit court accepted and adopted the recommendations of the guardian *ad litem.* Nevertheless, the court entered a final order requiring full releases of all claims in favor of both Oak Casualty and Kackley. The minor claimants objected to the portion of the final order releasing Kackley from liability and filed a motion for reconsideration. By order entered November 20, 1998, the circuit court denied the motion for reconsideration. It is from this order that the minor claimant's now appeal.

## II.

### STANDARD OF REVIEW

■ This case is before us on appeal from an order denying a motion for reconsideration filed on behalf of the minor claimants. With regard to our standard for reviewing a circuit court's order denying a motion for

reconsideration, we have previously explained:

> Our review of a denial of a motion to reconsider is for an abuse of discretion. *See Browder v. Director, Dep't of Corrections,* 434 U.S. 257, 263 n. 7, 98 S.Ct. 556, 560 n. 7, 54 L.Ed.2d 521, 530 n. 7 (1978); *Johnson v. Nedeff,* 192 W.Va. 260, 266, 452 S.E.2d 63, 69 (1994); *Robinson v. McKinney,* 189 W.Va. 459, 465, 432 S.E.2d 543, 549 (1993); Syl., *Ross v. Ross,* 187 W.Va. 68, 415 S.E.2d 614 (1992); Syl. pt. 5, *Toler v. Shelton,* 157 W.Va. 778, 204 S.E.2d 85 (1974); Syl., *Intercity Realty Co. v. Gibson,* 154 W.Va. 369, 175 S.E.2d 452 (1970).

*Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.,* 196 W.Va. 692, 705, 474 S.E.2d 872, 885 (1996). This standard notwithstanding, the specific issue before us, whether the trial court erred in ordering that Oak Casualty's insured, Kackley, be released from all liability arising from the accident underlying the interpleader proceeding, is a question of law which we will review *de novo.* "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995). With due regard for these rules, we proceed to consider the substantive issue before us.

## III.

### DISCUSSION

■ The sole issue raised on appeal is whether the circuit court erred by ordering, in an interpleader action filed pursuant to W.Va.R.Civ.P., Rule 22 by an insurance company to determine the proper division of insurance proceeds that were insufficient to cover claims resulting from an accident involving its insured, that the insured tortfeasor be released from all liability resulting from the underlying collision.

The United States Supreme Court has previously addressed a similar issue in a case with factual circumstances that were more complex than the case at bar. *State Farm*

---

4. In addition, Tabitha and Amanda filed a personal injury action against Kackley in the Circuit

Court of Berkeley County.

*Fire & Cas. Co. v. Tashire,* 386 U.S. 523, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). We look to federal law for guidance as Rule 22 of the West Virginia Rules of Civil Procedure is identical to Rule 22(1) of the Federal Rules of Civil Procedure.[5] The fact that *Tashire* addresses interpleader in the context of the federal statute, 28 U.S.C. § 1335, rather than under Rule 22, is of no concern with respect to the issue herein addressed because the federal interpleader statute differs primarily as to matters related to federal jurisdiction, venue and service of process. As one state court that relied on federal law to interpret its own interpleader rule has recognized:

> A distinction is made in the federal courts between "statutory" interpleader, authorized by 28 U.S.C. § 1335, and "rule" interpleader, authorized by rule 22(1) F.R. Civ. P. See 7 Wright & Miller, *Federal Practice and Procedure,* Civil § 1703, p. 365.[6] The distinctions between the two relate primarily to jurisdiction, the amount in controversy, citizenship of litigants, venue, and service of process. For the most part, these differences do not concern us.

*Club Exch. Corp. v. Searing,* 222 Kan. 659, 662, 567 P.2d 1353, 1356–57 (1977) (footnote added). Therefore, we proceed to consider *Tashire* along with other federal authority.

The facts underlying *Tashire* involved a collision between a Greyhound bus and a pickup truck in which thirty-four bus passengers and the bus driver were either injured or killed. Four of the injured passengers filed suit seeking more than $1,000,000 in damages from Greyhound Lines, Inc., the bus driver, the driver of the pickup and the owner of the pickup.

Thereafter, State Farm Fire & Casualty Co. (hereinafter "State Farm"), who insured the driver of the pickup, brought an action in the nature of interpleader[7] seeking to deposit with the court $20,000, which represented its maximum liability for personal injuries resulting from the collision under the policy it issued to the pickup truck driver. State Farm asked the trial court, *inter alia,* "to require all claimants to establish their claims against [its insured] and [State Farm] in this single proceeding and in no other." *Tashire* at 526, 87 S.Ct. at 1201, 18 L.Ed.2d at 273. Upon requests made by State Farm and Greyhound, the court granted an injunction providing that *all suits* against State Farm, the pickup truck driver, Greyhound and the bus driver "be prosecuted in the interpleader proceeding." *Id.* at 528, 87 S.Ct. at 1202, 18 L.Ed.2d at 274.

The order was ultimately appealed to the United States Supreme Court, where the Court concluded that State Farm was not entitled "to an order both enjoining prosecution of suits against it outside the confines of the interpleader proceeding and also extending such protection to its insured, the alleged tortfeasor." *Id.* at 533, 87 S.Ct. at 1205, 18 L.Ed.2d at 277. In reaching this conclusion, the Supreme Court explained:

> Here, the scope of the litigation, in terms of parties and claims, was vastly more extensive than the confines of the "fund," the deposited proceeds of the insurance policy. In these circumstances, *the mere existence of such a fund cannot, by the use*

---

5. While the West Virginia Interpleader rule does not contain a provision similar to Rule 22(2) F.R. Civ. P., that portion of the federal rule pertains primarily to federal jurisdiction and is not related to the issue before us.

6. For a more recent version of this comparison of rule and statutory interpleader, see 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* Civil 2d § 1703, at 497 (1986).

7. A bill of interpleader and a bill in the nature of an interpleader differ with regard to the stakeholder's (plaintiff's) interest in the stake:

> A bill of interpleader and bill in the nature of interpleader are governed by the same general principles except that in [the] bill of interpleader the plaintiff has no interest in the property held, whereas in the bill in the nature of interpleader the plaintiff need not be without interest in property claimed by others.

45 Am.Jur.2d *Interpleader* § 1, at 455 (1999) (footnote omitted). *See also* 10B Michie's Jur. *Interpleader* § 3, at 427 (1995) ("The only material difference between a bill in the nature of a bill of interpleader and a bill of interpleader, pointed out by the courts and the law writers, is that in a bill in the nature of a bill of interpleader, the plaintiff may show that he has an interest in the subject matter of the controversy between the defendants." (footnote omitted)).

*of interpleader, be employed to accomplish purposes that exceed the needs of orderly contest with respect to the fund.*

*Id.* at 533–34, 87 S.Ct. at 1205, 18 L.Ed.2d at 277 (emphasis added).[8] The Court further reasoned that "[t]he circumstance that one of the prospective defendants happens to have an insurance policy is a fortuitous event which should not of itself shape the nature of the ensuing litigation." *Id.* at 534–35, 87 S.Ct. at 1206, 18 L.Ed.2d at 278. The Court also described the extent to which an insurance company's interests are protected in an interpleader action:

> State Farm's interest in this case, which is the fulcrum of the interpleader procedure, is confined to its $20,000 fund. That interest receives full vindication when the court restrains claimants from seeking to enforce against the insurance company any judgment obtained against its insured, except in the interpleader proceeding itself.

*Id.* at 535, 87 S.Ct. at 1206, 18 L.Ed.2d at 278. Finally, the court observed the limits its decision placed upon the usefulness of utilizing interpleader to avoid multiple litigation:

> We recognize, of course, that our view of interpleader means that it cannot be used to solve all the vexing problems of multiparty litigation arising out of a mass tort. But interpleader was never intended to perform such a function, to be an all-purpose "bill of peace." Had it been so intended, careful provision would necessarily have been made to insure that a party with little or no interest in the outcome of a complex controversy should not strip truly interested parties of substantial rights— such as the right to choose the forum in

which to establish their claims, subject to generally applicable rules of jurisdiction, venue, service of process, removal, and change of venue. None of the legislative and academic sponsors of a modern federal interpleader device viewed their accomplishment as a "bill of peace," capable of sweeping dozens of lawsuits out of the various state and federal courts in which they were brought and into a single interpleader proceeding.

*Id.* at 535–36, 87 S.Ct. at 1206, 18 L.Ed.2d at 278 (footnote omitted).

Although *Tashire* was a complex case that involved numerous claimants and potential defendants, other courts addressing cases involving factual circumstances more closely related to the case *sub judice* have relied upon *Tashire* and recognized that the scope of an interpleader action is limited to disputes involving the interpleaded stake.

The United States District Court for the Eastern District of Virginia addressed whether it was proper for an interpleader court to enjoin outside suits against an insured in a case involving an accident between a tractor-trailer and a van that was carrying ten passengers. *Carolina Cas. Ins. Co. v. Mares,* 826 F.Supp. 149 (E.D.Va.1993). The owner of the tractor-trailer had purchased liability insurance from Carolina Casualty. The *Mares* court, relying on *Tashire,* denied Carolina Casualty's motion for an injunction prohibiting actions against its insured, and the employee/driver of its insured, that "merely [sought] to establish their liability but which [did] not seek to reach the fund which [was] the subject matter of [the interpleader] action." *Id.* at 155.

---

8. The Supreme Court recognized, however, that there are occasions where the interpleaded fund, rather than an underlying tort such as an automobile accident, is the target of the various claimants. In such circumstances, the Court noted, an order enjoining suits outside the interpleader action itself is appropriate:

> There are situations, of a type not present here, where the effect of interpleader is to confine the total litigation to a single forum and proceeding. One such case is where a stakeholder, faced with rival claims to the fund itself, acknowledges—or denies—his liability to one or the other of the claimants. In this situation, the fund itself is the target of the

claimants. It marks the outer limits of the controversy. It is, therefore, reasonable and sensible that interpleader, in discharge of its office to protect the fund, should also protect the stakeholder from vexatious and multiple litigation.

Id. at 534, 87 S.Ct. at 1205, 18 L.Ed.2d at 277 (footnote omitted). The case *sub judice* is not the type described by the *Tashire* Court as one in which enjoining suits outside the interpleader action may be appropriate. For an example of that type of case see *Provident Mutual Life Insurance Co. of Philadelphia v. Ehrlich,* 508 F.2d 129 (3d Cir.1975).

Similarly, *National Indemnity Co. v. Grimm* involved a multi-vehicle collision which included a truck that was owned by Krogers, Inc., and operated by an employee of Krogers. 760 F.Supp. 489 (W.D.Pa.1991). As a result of the collision, two individuals were killed and three others were injured. After four lawsuits claiming damages from the accident were filed against Krogers, National Indemnity Co., who had provided Krogers with a policy insurance that would cover the collision, recognized that the claims against Krogers would exceed the $1,000,000 single limit of liability contained in the Krogers policy. Consequently, National initiated an interpleader action and requested, in part, that the interpleader defendants be "enjoined from pursuing enforcement of any judgments they obtain in any of the underlying lawsuits presently pending ... [and] in any other proceeding aside from this action." *Grimm,* 760 F.Supp. at 492. The United States District Court for the Western District of Pennsylvania declared in *Grimm* that:

> There can be little question that a variety of adverse claims arising out of this accident will exceed the policy limits as set forth above. Under these circumstances we are bound by the *Tashire* Court decision wherein the Supreme Court, in a statutory interpleader action under 28 U.S.C. § 1335, found that when interpleader is sought against persons with unliquidated tort claims against the insured, the claimants may be enjoined from asserting their rights to the proceeds of the insurance policy except within the interpleader action, *but they cannot be enjoined from establishing their claims against the insured in a forum of their own choosing.* [*Tashire*] at 533, 87 S.Ct. at 1205.

*Id.* (emphasis added). The court then concluded "[w]ere we to grant the relief requested, that being an Order which would extend protection to plaintiff's insured, the alleged tortfeasor, we would accomplish purposes that exceed the orderly contest with respect to the fund." *Id.* at 493.

Another case that is comparable to the case *sub judice* was decided in the United States District Court for the Southern District of Mississippi. *Mid–American Indem.*

*Co. v. McMahan,* 666 F.Supp. 926 (S.D.Miss. 1987). In *McMahan,* the tortfeasor was driving under the influence of alcohol and collided with another vehicle. Three of the occupants of the struck vehicle were killed, and a fourth occupant was seriously injured. A liability insurance policy covering the automobile driven by the tortfeasor was provided by Mid–American. The limit of liability under that policy was $10,000 per person and $20,000 per occurrence. Because the potential claims resulting from the accident were expected to greatly exceed the liability limits of the policy, Mid–American initiated an action for interpleader and requested an order "enjoining [an] action presently pending against [the tortfeasor/driver], together with any actions which may be instituted against either him or [his wife] ...." *McMahan* at 929. The district court denied the motion and observed "[t]he United States Supreme Court has recognized that injunctive relief, while available to restrain actions affecting the fund, is not available to enjoin prosecution of suits outside the bounds of the interpleader proceeding, a proscription which includes suits against the insured." *Id.* (citing *Tashire*).

Likewise, in *Maryland Casualty Co. v. Sauter,* 344 F.Supp. 433 (N.D.Miss.1972), Edward Issa, while driving an automobile for which he had purchased liability insurance coverage from Maryland Casualty, struck another automobile seriously injuring the four occupants of that automobile. The four occupants subsequently asserted claims against Issa that exceeded his liability insurance coverage. Consequently, Maryland Casualty interpleaded the limits of Issa's policy naming, among others, the four injured occupants as defendants. Issa sought to intervene in the interpleader action and asserted that "all litigation between the parties should be conducted within the confines of one action." *Sauter* at 436. Relying on the Supreme Court's decision in *Tashire,* the United States District Court for the Northern District of Mississippi concluded that "[t]he fact that Maryland [Casualty] properly invoked the interpleader jurisdiction of this court under Section 1335, does not, however, entitle Maryland [Casualty] to an order both enjoining prosecution of suits against it outside the

confines of the interpleader proceeding, and also extending such protection to Issa, its insured." *Id.*[9]

The Supreme Court of Kansas has also reached the conclusion that law suits against an insured may not be enjoined in an interpleader action instituted by an insurer. In *Club Exchange Corp. v. Searing,* 222 Kan. 659, 567 P.2d 1353 (1977), Club Exchange Corp. insured both drivers who were involved in a two-automobile accident. After determining that the claims for damages would exceed the liability limits of the relevant policies, Club Exchange instituted an interpleader action seeking "a determination of its total liability and ask[ing] that it be permitted to pay that amount into court and be released from all further liability on its policies." *Searing* at 660–61, 567 P.2d at 1355. In addition, Club Exchange requested a temporary injunction "to prevent the defendants from instituting separate lawsuits." *Id.* at 661, 567 P.2d at 1355. In reaching it's holding that "[i]nterpleader does not limit the filing of lawsuits by the claimants directly against third-party tortfeasors or against the stakeholder's insured," Syl. pt. 7, *Searing,* the court, relying on *Tashire,* explained that:

> interpleader is a joinder device whereby all of those who claim some interest in a particular fund (the stake) may be joined in the action, and may there assert and litigate their claims against the fund. Interpleader protects the stakeholder from multiple suits, and from determining at its peril the validity and priority of disputed claims; it also protects the claimants by bringing them together in one action so that a fair and equitable distribution of the fund may be made.
>
> . . . .
>
> But interpleader does not, and restraining orders and injunctions granted by the interpleader court should not, limit the filing of lawsuits by the claimants against third-party tortfeasors or against the plaintiff's insured.

*Id.* at 664–65, 567 P.2d at 1358.

■■■ In light of the foregoing authority, it is clear that any restrictions on legal actions imposed by an interpleader court must be limited to actions involving the interpleaded stake. In an interpleader action, a court may not restrict the injured parties from pursuing law suits against an alleged tortfeasor to establish the liability of that person or entity. We therefore hold that in an interpleader action filed by an insurance company seeking the orderly contest of insurance proceeds arising from automobile liability coverage, which proceeds are insufficient to cover all claims resulting from an accident involving its insured, the circuit court may not restrict an interpleader defendant's right to file a lawsuit against the insured tortfeasor to determine the liability of that person or entity for the underlying accident.[10]

Here, the circuit court erred as a matter of law when it restricted the minor claimants' rights to sue Kackley by requiring them to

---

9. For other federal court cases reaching similar conclusions, see *Travelers Indemnity Co. v. Greyhound Lines, Inc.,* 377 F.2d 325 (5th Cir.1967); *Wasserman v. Fidelity and Deposit Co. of Maryland, Inc.,* 490 F.Supp. 564 (S.D.N.Y.1979).

10. Oak Casualty encourages us to further hold that an interpleader claimant who refuses to release an insured as a consequence of obtaining his or her share of the fund interpleaded by an insurer in a case such as the one presently before us be prohibited from receiving disbursement of his or her portion of the fund until after a judgment has been rendered in favor of such claimant and against the insured. To support this position, Oak Casualty cites *United Services Automobile Association Property and Casualty Insurance v. Lacy,* 1991 WL 68905 (Del.Super.1991). Oak Casualty does not cite to any other authority for this proposition and we are aware of none.

Furthermore, *Lacy* was not handed down by the Delaware Supreme Court, but is an unreported decision of an inferior Delaware court. Consequently, we decline to follow this authority, which we find to be unpersuasive.

In addition, Oak Casualty attempts to raise additional issues that are beyond the scope of the interpleader action and/or were not addressed by the trial court. Such issues are not properly before this court and will not be addressed. *See Stonebraker v. Zinn,* 169 W.Va. 259, 266, 286 S.E.2d 911, 915 (1982) ("It is a well established principle that this Court will not decide nonjurisdictional questions which have not been raised in the court below. *West Virginia Department of Highways v. Delta Concrete Co.,* [165] W. Va. [398], 268 S.E.2d 124 (1980); *Dixon v. American Indus. Leasing Co.,* 157 W.Va. 735, 205 S.E.2d 4 (1974); *Shaw v. Shaw,* 155 W.Va. 712, 187 S.E.2d 124 (1972).").

release Kackley from all claims arising from the underlying automobile accident. For this reason, we find that the circuit court abused its discretion in denying the minor claimants' motion for reconsideration, which was based solely upon the portion of the court's order pertaining to the release.

## IV.

### CONCLUSION

For the reasons explained in the body of this opinion, we reverse the November 20, 1998, order of the Circuit Court of Mineral County to the extent that it required the minor claimants, through their guardian the Sheriff of Mineral County, to release Kackley of all liability for the automobile collision underlying this interpleader action. Furthermore, we direct that any release executed by the Sheriff of Mineral County in compliance with the court's order is void.

Reversed.

Judge GARY L. JOHNSON, sitting by temporary assignment.

Justice SCOTT did not participate.