**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**NATIONWIDE LIFE INSURANCE COMPANY,**
**Plaintiff Below, Petitioner,**

**vs.) No. 17-0224 (Wyoming County No. 16-C-107)**

**EVA DAWN COMPTON, KAYLA DENISE COMPTON,**
**BETTY HOLLEMAN, LINDA RASNAKE, AND**
**THE ESTATE OF ROBERT L. ADAMS,**
**Defendants Below, Respondents.**

**FILED**
**March 13, 2018**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

The petitioner herein and plaintiff below, Nationwide Life Insurance Company ("Nationwide"), by counsel Ronda L. Harvey and Patrick C. Timony, appeals an order entered December 5, 2016, by the Circuit Court of Wyoming County. By that order, the circuit court denied Nationwide's request to interplead $30,000.00 of life insurance policy death benefits with the circuit court. Eva Dawn Compton ("Ms. Compton") is represented by counsel, Timothy P. Lupardus and Tenisha D. Cline. Kayla Denise Compton ("Kayla Compton") filed no responsive pleading below, but was recorded as present at hearings held before the circuit court. Betty Holleman (individually and as administratrix of The Estate of Robert Adams) ("Ms. Holleman") and Linda Rasnake ("Ms. Rasnake") filed responsive pleadings *pro se* and appeared in person, *pro se*, during proceedings before the circuit court. Kayla Compton, Ms. Holleman, and Ms. Rasnake have not filed briefs with this Court.

On appeal to this Court, Nationwide contends that the circuit court erred when it denied Nationwide interpleader relief under Rule 22 of the West Virginia Rules of Civil Procedure. Nationwide claims that interpleader provides an uninterested stakeholder, such as Nationwide, a vehicle to deposit funds with the court and to join multiple conflicting claimants with competing claims to the funds so that a determination as to the asset's rightful owner can be made. Nationwide asserts that the circuit court abused its discretion in refusing its request which presented a textbook interpleader scenario.

Upon our review of the parties' arguments, the appendix record, and the pertinent authorities, we find that the circuit court erred in denying the request of Nationwide for relief pursuant to interpleader. Accordingly, we reverse and remand this case to allow Nationwide to file an interpleader and deposit the proceeds of the life insurance policy into the court. Because this case does not present a new or significant issue of law, and for the reasons set

1

forth herein, we find this case satisfies the "limited circumstance" requirements of Rule 21(d) of the West Virginia Rules of Appellate Procedure and is proper for disposition as a memorandum decision.

On November 28, 1978, Robert Adams ("Mr. Adams"), the decedent herein, purchased life insurance policy No. L035933680 from Nationwide. Due to Mr. Adams' permanent disability, Nationwide converted the policy to a whole life policy No. L018306570 ("the Policy") on November 28, 2002. The Policy provided Mr. Adams' beneficiary with a death benefit of $30,000.00.

Mr. Adams' wife of some forty-six years was the named beneficiary until her death in 2013. Thereafter, on November 7, 2013, Mr. Adams requested that the beneficiary under the Policy be changed to Ms. Rasnake, who is Mr. Adams' step-daughter. On June 15, 2015, Mr. Adams requested that Nationwide change the beneficiary to Ms. Compton. The designated beneficiary was changed by Mr. Adams to Ms. Rasnake on July 21, 2015. On January 19, 2016, Mr. Adams once again requested that the beneficiary be changed to Ms. Compton. The record includes copies of the beneficiary designation change application forms.

On May 11, 2016, Mr. Adams, with assistance from his sister, Ms. Holleman, telephonically contacted Nationwide inquiring about who the named beneficiary was on the Policy. The telephone call was recorded by Nationwide and is part of the record. Around 4:21 pm on May 11, 2016, Ms. Compton called Wyoming County 911 and reported Mr. Adams as missing.[1] Some two weeks later, on May 24, 2016, law enforcement officers located Mr. Adams' body and recovered it from the Guyandotte River. An investigation of the circumstances of the death of Mr. Adams proceeded and Nationwide was served with a

---

[1]The report of the Wyoming County Sheriff's Department indicates:

Caller stated that she last saw Mr. Adams approx 1100 on Tue 5-10-16. Stated he had went outside to take some trash out and never returned. Upon arrival, the u/o saw where something had knocked the vegetation over leading down to the river. Both Pineville and Brenton fire depts responded to search the river bank due to the river being higher than normal because of recent rain. The search was called due to lighting and will resume in the morning. Upon speaking to family members of Mr. Adams, I learned that Mr. Adams had an insurance policy and Mrs. Compton was the beneficiary. Mr. Adams [sic] sister said it was worth approx $30,000.00. Mr. Adams was last seen wearing blue jeans and a white t-shirt and white shoes.

2

subpoena from the Wyoming County Sheriff seeking all life insurance documents related to Mr. Adams.

Following the recovery of Mr. Adams' body, Ms. Compton contacted Nationwide about the distribution of the death benefit indicating that she was the designated beneficiary. Ms. Holleman also contacted Nationwide regarding the death benefit. Ms. Holleman disputed Ms. Compton's entitlement to the benefit representing that it rightfully belonged to Ms. Rasnake because Ms. Compton improperly influenced Mr. Adams, who lacked capacity. Ms. Holleman expressed her belief that Ms. Compton had involvement in Mr. Adams' death. Additionally, Ms. Holleman submitted a letter from a physician who represented that Mr. Adams and his wife had been his patients since 2007, that Mr. Adams became depressed following his wife's death, and that, thereafter, Ms. Compton had a profoundly negative and controlling effect on Mr. Adams. Specifically, the physician indicated that Mr. Adams was "confused, unsure of himself, had poor insight, etc." Additionally, among other things, the physician wrote that, in his professional opinion, "Mr. Adams was not competent to make any type of legal or financial decisions."

Given the competing claims, as well as the Wyoming County Sheriff's Department open investigation into the circumstances of the death of Mr. Adams, on August 15, 2016, Nationwide filed an Interpleader Complaint with the Circuit Court of Wyoming County. Ms. Compton filed an answer generally indicating that Nationwide should pay her the policy proceeds as the named beneficiary of the policy. A handwritten letter answer of Linda Rasnake detailed her relationship with her step-father, Mr. Adams, as well as alleged facts regarding the detrimental and abusive role of Ms. Compton in his life. Generally, Ms. Rasnake claimed that Ms. Compton was a well-known local drug addict who showed up with friends at Mr. Adams' home three times a month when he received his miner's pension, his social security, and his workers' compensation benefits; left him financially ruined; sold all his household goods, appliances, and furnishings for drug money; and destroyed his vehicle. She further indicated that Ms. Compton was not Mr. Adams' fiancée and Kayla Compton was not his step-daughter as had been indicated in the beneficiary change documents. Ms. Holleman also filed a handwritten answer to the effect that Ms. Compton was a drug abuser, was not a fiancée of Mr. Adams, and orchestrated and lied on beneficiary forms, and further asserted that Kayla Compton is a minor who has been in the custody of the West Virginia Department of Health and Human Services. Ms. Holleman disputed the legitimacy of the beneficiary change form stating that the form purportedly and improperly was signed by Ms. Compton as a witness and by Ms. Compton's boyfriend as a witness. She also indicated that the contingent beneficiary, Kayla Compton, was falsely listed as a step-daughter. Ms. Holleman's position was that the proceeds of the Nationwide policy should be paid to Ms. Rasnake.

A hearing was held on November 16, 2016, during which Nationwide and Ms. Compton were represented by counsel. At the hearing, counsel for Ms. Compton represented that there was no objection to Nationwide depositing the money into the circuit court. Ms. Compton argued that she was the last formally named beneficiary, she had not been charged with a crime in connection with Mr. Adams' death, and the autopsy showed nothing other than death by drowning. Ms. Holleman argued that Ms. Compton exerted undue influence over Mr. Adams, raised questions regarding his mental competence, indicated that there were misrepresentations on the beneficiary change forms regarding Ms. Compton, and asserted that Ms. Compton was involved in Mr. Adams' death. Nationwide contended that Ms. Compton and Ms. Holleman had competing, conflicting, and legitimate claims to the funds they were holding. In light of the issues raised and the ongoing criminal investigation, coupled with the fact that it had no interest in the money, Nationwide argued for the application of a traditional two-step interpleader procedure whereby it would deposit the funds into the court, where interest would be earned, until such time as those with competing interests resolved the matter through a jury trial, or otherwise.[2]

The circuit court was disturbed by the notion that the two competing parties would be expending money to determine to whom the funds should be paid. The circuit court indicated that the individuals would be "stuck paying for their own lawyers" noting further that "I see Nationwide being obligated to pay for legal representatives for everybody." The circuit court questioned "[w]hy should they pay for an attorney? My take is that they may be entitled to have lawyers representing them by Nationwide because if it weren't for Nationwide for that lawsuit which is exactly where it's going." Moreover, the circuit court suggested that Nationwide was engaging in a money laundering tactic. "I'll tell you what they're trying to do, they're trying to laundry [sic] their money." According to the circuit court, Nationwide was seeking relief in the form of "laundering their money to the Court."

Thereafter, the circuit court entered the December 5, 2016, order concluding that the parties have conflicting claims which may need to be litigated in court. However, the circuit court observed that Nationwide was unfairly forcing the parties to litigate because it was unsure how to honor its contract with Mr. Adams. The circuit court further concluded that forcing the potential beneficiaries to litigate would subject them to costs and attorney's fees that would reduce the death benefit. Thus, Nationwide's request to pay the death benefits into the court and be removed from the action was denied.

---

[2]This Court notes that it has set forth the general positions of the potential beneficiaries for the sole purpose of describing the competing claims. No inferences or conclusions can be drawn from our descriptions. Resolution of the competing claims is not an issue before this Court.

On December 16, 2016, Nationwide filed a motion to amend the order whereby it again set forth a factual and legal argument as to why the interpleader process affords it an appropriate mechanism for the deposit with the court of the insurance funds. A hearing was held on February 8, 2017. Nationwide and Ms. Compton were present by counsel. Kayla Compton was present. Ms. Rasnake and Ms. Holleman were present *pro se.* Ms. Compton and Ms. Holleman again argued over the facts regarding who should be the beneficiary of the funds. The circuit court reiterated its position that it was not going to permit Nationwide to deposit the funds and "walk away." The circuit court again stated the position that "it seems to me that [Nationwide] just want[s] to pay the money into a court so that people can spend their assets in their suit over who gets the money and who gets to go home free and I'm hard put to allow that." Accordingly, an order was entered on February 14, 2017, denying Nationwide's motion to amend the order. Nationwide then filed and perfected the present appeal.

> When this Court reviews challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review is applied. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard.

Syl. pt. 1, *McCormick v. Allstate Ins. Co.*, 197 W. Va. 415, 475 S.E.2d 507 (1996). *See also* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue of an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

Nationwide argues that the facts clearly establish the existence of conflicting claims of entitlement to the beneficiary funds it holds. Nationwide contends the circumstances present a classic interpleader scenario entitling it, as a stakeholder, to interpleader relief by depositing the funds with the circuit court in order to avoid multiple liability. Both Ms. Compton and Ms. Holleman have threatened litigation against Nationwide. It is further asserted that the circuit court's refusal to grant interpleader relief was arbitrary and irrational.

Ms. Compton filed a perfunctory brief explicitly stating that she "takes no position with respect to whether Nationwide Life Insurance Company should be permitted to interplead funds with the Circuit Court. . . ." However, without elaboration, Ms. Compton proceeded to assert that since interpleader is discretionary, the circuit court "was simply exercising discretion" which requires the deference of this Court.

Interpleader, pursuant to Rule 22 of the West Virginia Rules of Civil Procedure, is defined as follows:

Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that the plaintiff is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule 20.

Our analysis begins with a recognition of the general use of interpleader. We observe:

Interpleader under Rule 22 is a vehicle for bringing an action by a person holding money or property to compel persons asserting conflicting claims to the same, to adjudicate their rights to the money or property in a single suit. It is the means by which an innocent stakeholder, who typically claims no interest in an asset and does not know the asset's rightful owner, avoids multiple liability by asking the court to determine the asset's rightful owner. That is, the purpose of interpleader is for the stakeholder to protect itself against the possibility of court-imposed liability to a second claimant where the stakeholder has already voluntarily paid a first claimant.

Louis J. Palmer, Jr. & Robin Jean Davis, *Litigation Handbook on West Virginia Rules of Civil Procedure*, Rule 22 § 22[2], at 611-12 (5th ed. 2017) (citations omitted).

In *Oak Casualty Insurance Co. v. Lechliter*, 206 W. Va. 349, 356, 524 S.E.2d 704, 711 (1999), this Court recognized the function of interpleader as a joinder device typically used when multiple parties claim an interest in a specific fund. We further recognized the function of interpleader in protecting the holder of the funds from multiple lawsuits and from attempting to determine the validity of disputed claims while at the same time protecting the various claimants by bringing them together in a single action so that distribution of the fund may be achieved in a fair and equitable fashion. *Id.*

In the insurance context, interpleader is typically invoked in the setting of two or more claimants demanding payment of insurance proceeds which the carrier desires to pay, but faces conflict and hazard in choosing whom to pay.

This situation arises most frequently for insurers in the context of life insurance policies or annuities. In a typical situation, an owner of a life policy

6

or annuity dies and the policy specifies that "A" is the proper beneficiary. What does the insurer do? Does it make a determination and risk being sued by the other party? Interpleading the disputed funds is often the best remedy to this situation.

Jeffrey E. Thomas & Nathaniel S. Shapo, *New Appleman on Insurance Law* 85.03[1] (Library ed. 2017).

Given the record, this Court need not engage in an extensive analysis. We first observe that Ms. Compton represented that she takes "no position" regarding whether Nationwide should be permitted to interplead the Policy death benefits. This representation is consistent with the position taken before the circuit court that there was no objection to Nationwide "paying the money into the Court." With respect to the discretion of the circuit court to grant interpleader, Ms. Compton advanced a scant one-sentence argument stating that "[i]f the Rule 22 interpleader is discretionary, then the lower court was simply exercising discretion in its finding." Moreover, during the oral argument of this case, counsel for Ms. Compton acknowledged that the facts of the case *sub judice* fall squarely within the parameters of interpleader as set forth in Rule 22. Given the failure of the circuit court to apply Rule 22, we find it necessary to address the nature of the circuit court's error.

The circuit court plainly recognized in its order that there were conflicting claims to the death benefit. Thus, the circuit court acknowledged the existence of circumstances presenting the precise scenario for applying interpleader under Rule 22 when the competing claims "are such that the plaintiff is or may be exposed to double or multiple liability." Nevertheless, the circuit court ignored the function of interpleader as well as Nationwide's demonstration of conflicting claims against the funds and instead determined that it was "unfair to subject the potential beneficiaries to litigation and attorney fees which will substantially reduce the death benefit." This conclusion of law was made in the absence of any supporting authority. We have not been directed to authority for this proposition and have not unearthed any such authority. Moreover, this determination of the circuit court was made in the context of repeatedly and perjoratively characterizing Nationwide's Rule 22 interpleader effort at joining the parties with conflicting claims and depositing the funds as "money laundering." Additionally, the determination was made against a background of repeatedly remarking that Nationwide should pay for lawyers for the potential beneficiaries- a proposition for which there also is no supporting authority.

There is no escaping the conclusion that in disregarding Rule 22, the circuit court acted in an arbitrary and irrational manner in denying Nationwide interpleader relief and thereby abused its discretion. *See Wells v. Key Communications, L.L.C.*, 226 W. Va. 547, 551, 703 S.E.2d 518, 522 (2010) (discussing role of this Court on appeal when trial court has

7

discretion as being limited to whether the trial court acted in a way that was so arbitrary and irrational that it constituted an abuse of discretion). This Court also has observed that "[o]nly where we are left with a firm conviction that an error has been committed may we legitimately overturn a lower court's discretionary ruling." *Covington v. Smith*, 213 W. Va. 309, 322-23, 582 S.E.2d 756, 769-70 (2003). The record before us compels our "firm conviction" that the trial court has committed error.

Accordingly, based upon the foregoing analysis, we find that the circuit court abused its discretion in the issuance of the December 5, 2016, order of the Circuit Court of Wyoming County denying the request of Nationwide to pay death benefits into the court and be removed from the civil action, and, therefore, the order is reversed, and the matter is remanded for further proceedings consistent with this Memorandum Decision.

Reversed and Remanded.

**ISSUED:** March 13, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum, II
Justice Allen H. Loughry, II
Justice Elizabeth D. Walker

8