JARVIS V. ADDAIR

*v.*

MAJESTIC PETROLEUM CO., INC.

(No. 13609)

Decided March 8, 1977.

*Tutwiler, Crockett & LaCaria, J. Strother Crockett* for appellant.

*Ballard & Brumfield, G. David Brumfield* for appellee.

HARSHBARGER, JUSTICE:

"We desire to be understood that this Court does not say, or lay down any rule that there never can happen a case of such excessive damages in tort where the Court may not grant a new trial; but in that case the damages must be monstrous and enormous indeed, and such as all mankind must be ready to exclaim against, at first blush." *Beardmore v. Carrington,* 2 Wilson, K. B. 244, 250, 95 Eng. Rep. 790, 793, (1764).

This case comes to us because a McDowell County Circuit Court jury found $9,900.00 damages due plaintiff, whose special damages were $126.76.

Plaintiff was burned when gas from a well being drilled near his home caught fire. There was a dispute in the evidence about the source of ignition: It either caught from a cigarette plaintiff was smoking or from a lighted match thrown by defendant's employee.

Plaintiff suffered second degree burns to his face and hands. His hair was burned off. He was taken to Welch Emergency Hospital, a charitable hospital where he remained nine days. His expense at the hospital was only $126.76, the cost of medicine.

According to defendant's brief the residual damages plaintiff suffers are a cosmetic discoloration of his hands, and a moderate paresthesia or numbness and discomfort in cold weather.

Defendant contends that the verdict was excessive and evidenced jury passion, prejudice and partiality and is based upon evidence that is contrary to natural law and physical facts. The trial court refused to set aside the verdict and award a new trial; defendant asks us to do so.

The books are full of attempts by this and other courts to carefully review trial records to determine whether trial judges should have set aside jury verdicts as excessive. Implicit in all these cases is the substitution of judges' judgment about the amount that should have been awarded for the judgment of juries.

An interesting example is *Virginian Railway Company v. Armentrout*, 166 F.2d 400 (4th Cir. 1948), wherein the United States Fourth Circuit Court of Appeals decided that Judge Ben Moore of the U.S. District Court for the Southern District of West Virginia erred in refusing to set aside a verdict as excessive. The verdict was $160,000 to an infant whose hands and portions of whose arms were cut off by a backing locomotive in Raleigh County, West Virginia.

To justify its ruling the appellate court spoke about elements the jury could have considered:

"The problem of assessing damages in a case of this sort is one which must be approached with common sense. The little child has been terribly injured; but there is nothing from which loss of earning capacity can be estimated with any degree of accuracy. The jury must do the best it can to estimate this, taking into account, of course, such matters as average earnings. They can consider, also that the child is bright and intelligent and with proper education may be able to develop high earning capacity in intellectual pursuits. While pain, suffering and humiliation are to be considered, it should also be considered on the matter of humiliation whether one who has suffered the deprivation of a member in infancy is likely to feel the same sense of humiliation from it as does one who sustains the loss later in life, and whether mechanical aids, which science has brought to a high state of development as a result of experimentation for the benefit of soldiers wounded in the late war, may not enable him to overcome this in considerable measure. All of these matters should be taken into account and an amount awarded which in the opinion of the jury will fairly compensate for the injury inflicted. It is for the jury to fix the amount but they must do this within the bounds of reason, and a verdict on which the mere interest at 3% amounts to more than five times the maximum allowed by the state compensation laws and $1,800 per year more than the judge estimates the loss of adult earning power is manifestly too much." 166 F.2d at 407-408

We quote the words to illustrate what we consider to be the dangerous exercise of speculation by jurists about what juries *could* have considered in arriving at verdicts (of course, not knowing whether or not they did), elements that in the judges' minds *should* have resulted in the award of less money.

It seems ludicrous for an appellate court to say that a child whose hands have been cut off is not entitled to the damages awarded, because the child is bright and intelligent and with proper education *"may be able to develop high earning capacity in intellectual pursuits!"* But to such extremes we are pushed when we embark upon the practice of second guessing.

After the *Armentrout* decision the Fourth Circuit applied its reasoning in *Southern Railway Company v. Neese,* 216 F.2d 772 (4th Cir. 1954) and ruled that the Eastern District of South Carolina Court abused its discretion by not awarding a new trial where $60,000 damages were found by a jury in favor of W. W. Neese, Administrator of William Neese, deceased. William, 22, unmarried and living with his parents, was an employee of the railroad and was killed by one of its engines. The Circuit Court examined into the evidence at length and concluded that the award, which the trial court had reduced to $50,000 because of excessiveness, was still too high.

The United States Supreme Court, in *Neese v. Southern Railway Company,* 350 U.S. 77, 76 S. Ct. 131, 100 L. Ed. 60 (1955) by *per curiam* order, said, "We reverse the judgment of the Court of Appeals without reaching the constitutional challenge to that court's jurisdiction to review the denial by the trial court of a motion for a new trial on the ground that the verdict was excessive." The court said it reviewed the evidence and thought the action of the trial court was not without support in the record and should not have been disturbed. *See, West v. Richmond, F. & P. R. Co.,* 528 F.2d 290 (4th Cir. 1975).

We are thus brought to the nub of the matter of setting aside "excessive" verdicts and awarding new trials: Are there state and federal constitutional restrictions that prohibit court's interference with jury verdicts claimed to be excessive?

There have been extensive discussions in the cases about this. The federal courts have developed case law about Seventh Amendment affect upon both the trial

courts' and the appellate courts' authority to reexamine facts found by juries.

"In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const. Amend. VII.

Some federal courts view as restricted the right of appellate courts to interfere with trial judges' discretion in setting aside excessive verdicts. *Simmons v. Avisco, Local 713, Textile Workers Union of America,* 350 F.2d 1012 (4th Cir. 1965). But as Judge Medina teaches in *Dagnello v. Long Island Railroad Company,* 289 F.2d 797 (2d Cir. 1961), state appellate courts have recognized no limitation on their authority to review actions of trial judges who have upheld or set aside jury verdicts claimed to be excessive.

And the authority of the trial judges themselves to grant new trials where they conceive verdicts to be excessive was also discussed in *Dagnello:*

"From the early days of the Republic trial judges seem to have assumed they had power to set aside verdicts and grant new trials on the sole ground that they were excessive, despite the fact that common law trial judges in England, prior to the adoption of the Seventh Amendment in 1791, exercised no such power, as motions for new trials were not addressed to the trial judges." 289 F.2d at 802-803.

*See also, Dimick v. Schiedt,* 293 U.S. 474, 55 S. Ct. 296, 79 L. Ed. 603 (1935), where the constitutionality of judicial interference with inadequate and excessive jury verdicts is discussed and the court thoroughly examines the English common law as of 1791.

Our own state constitution restates the federal constitution's Seventh Amendment prohibition against reexamination of facts tried by juries. Article 3, Section 13

prescribes that "No fact tried by a jury shall be otherwise reexamined in any case than according to the rules of the common law." However, this court has never decided an excessive jury verdict case upon the constitutional basis. See *Carlin*, "Remittiturs and Additurs", 49 *W. Va. Law Q.* 1 (1942).

The first West Virginia decision dealing with the question was *Sweeney v. Baker*, 13 W. Va. 158 (1878). At page 222 of the State Report the court said:

> "A new trial in such a case ought not to be granted, especially by the Court of Appeals, unless the damages assessed by the jury are so enormous as to furnish evidence of prejudice, partiality, passion, or corruption on the part of the jury."

We note the court intimated that the standard guiding appellate courts might differ from the trial court rule. No such distinction has been formulized in the later cases, however, and we hold that our constitutional prohibition against reexamination of facts tried by juries except according to common law rules applies to all our courts, there being no applicable law to the contrary.

*Sweeney* introduced into West Virginia law the words of Chief Justice Kent which seem to be the basis for the American rule about award of new trials because of excessive jury verdicts. Our court cited *Coleman v. Southwick*, 9 Johns. 45, 52 (N.Y. 1812) where Kent relied upon the English authorities, including *Beardmore*, for this rule about judges setting aside "excessive" jury verdicts:

> "The damages, therefore, must be so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable and outrageous, and such as *manifestly show* the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess." (Emphasis added.)

The common law recognized that a different rationale was applicable to determine courts' authority to interfere with jury verdicts where the damages were readily ascertainable, and courts' authority to interfere with verdicts where the damages were indeterminate. When the amount was capable of exact proof, and thus left nothing for the jury to have opinion about, the courts did not hesitate to adjust the verdicts to the proved damages.

> "There is great difference between cases of damages which be certainly seen, and such as are ideal, as between assumpsit, trespass for goods, where the sum and value may be measured, and actions of imprisonment, malicious prosecution, slander, and other personal torts, where the damages are matter of opinion, speculation, ideal; . . ." *Beardmore, supra* at 248, 95 Eng. Rep. at 792. And *see, Coleman v. Southwick,* 9 Johns. at 52.

The courts then and now have never hesitated to correct mistaken verdicts where sums certain were involved. Some of our cases, such as *Jordan v. Bero,* cited and quoted below, have stated that "mistake" was a basis for reducing excess verdicts where indeterminate damages were being tested. These seem incorrect based upon our examination of the common law precedents.

Every adjective and phrase Kent used to describe the excessiveness necessary to be present in a verdict to allow judicial interference, came from the English cases he cited. And in addition we found "monstrous" in *Beardmore,* a word we particularly admire and recommend to our brethren to encourage their restraint in setting aside verdicts claimed to be too large.

Through the years courts have emasculated the common law interdiction. Now all that remains is the "mealymouth" caution against setting aside a verdict unless it *"indicates* that the jury was influenced by passion, partiality, prejudice or corruption, or entertained a mistaken view of the case." (Emphasis added). *Jordan v. Bero,* ___ W. Va. ___, 210 S.E.2d 618, 638 (1974), citing

*Sargent v. Malcomb*, 150 W. Va. 393, 146 S.E.2d 561 (1966) and extensive other West Virginia authorities.

How meek and mild has become the rule since Kent first proclaimed it, using as his precedent the common law to which our federal and state constitutions refer us! We believe too much of the force has been lost from the original admonitions in the old cases and that the constitutions require us not to interfere with jury verdicts claimed to be excessive where the amount is in Kent's words a "matter of opinion", 9 Johns. at 52, unless the verdict is monstrous and enormous, at first blush beyond all measure, unreasonable and outrageous, and such as manifestly shows jury passion, partiality, prejudice, or corruption.

This rule is no more objective than our former mild-mannered measure. Affixing it to the constitutions and returning the heady language that was originally its expression, does not of course remove the final judgment from the judges.

But we are hereby admonishing our judges and ourselves, in the same manner as did Lord Camden in *Beardmore*, not to interfere in the jury's domain except with extreme reluctance. The constitutional scriveners did not repose in the bench the responsibility for finding facts, but in the peers of those seeking justice.

In our case here we agree with the trial court, and certainly do not believe the verdict evidences any of our old-rule jury passion, prejudice, partiality, corruption or mistake. We doubt anyone would accept having his hair burned off and the skin on his face and hands baked to the second degree for $9,900.00. We would not.

Defendant's proposition that testimony by plaintiff that in his opinion gas would not ignite from a burning cigarette, was contrary to natural law and that we should reverse and remand on this account has no merit. The evidence was adduced on cross-examination and defendant cannot complain about it. *Browning v. Hoffman*, 90 W. Va. 568, 111 S.E. 492 (1922).

*Affirmed.*