559 S.E.2d 53

**Helen FOSTER, Individually and as the Executrix of the Estate of Hoy Dale Foster, Deceased, Plaintiff Below, Appellant,**

v.

**Hossein SAKHAI, M.D., Defendant Below, Appellee.**

**No. 29339.**

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 19, 2001.

Decided Dec. 12, 2001.

Roger D. Williams, Esq., Sprague W. Hazard, Esq., Charleston, for Appellant.

C. Benjamin Salango, Esq., William J. Cooper, Esq., Flaherty, Sensabaugh & Bonasso, Charleston, for Appellee.

MCGRAW, Chief Justice.

Appellant Helen Foster (sometimes also referred to as "plaintiff" in the course of this opinion) and her late husband filed a medical malpractice suit against appellee Dr. Hossein Sakhai for personal injuries the Fosters alleged as a result of brain surgery performed by Dr. Sakhai upon Mr. Foster. Mr. Foster died before the case could come to trial, but at the trial, the jury awarded Mrs. Foster and the estate of Mr. Foster $800,000. The trial judge granted a new trial to Dr. Sakhai because of alleged confusion in the jury charge and because of certain statements made by plaintiff's counsel during closing argument. Because we find any alleged error below to have been harmless error, we reverse and remand for the reinstatement of the jury's verdict.

## I.

## BACKGROUND

Hoy Dale Foster lived in Mason County, West Virginia with his wife Helen Foster. In 1995, Mr. Foster had recently retired from his job in a local aluminum plant when he began to experience some unusual problems with his vision. On December 20, 1995, Mr. Foster visited his doctor, a Dr. Brubaker, who ordered an MRI of Mr. Foster. Both Dr. Brubaker and another doctor, a neurologist named Dr. Levert, reviewed the MRI of Mr. Foster. According to Mrs. Foster, the MRI showed that Mr. Foster had a single brain tumor located in the base of his brain, the cerebellum.

Dr. Levert referred Mr. Foster to another doctor, the defendant below and appellee in this action, Dr. Hossein Sakhai, a neurosurgeon practicing in Huntington, West Virginia. Less than a month later, on January 9, 1996, Dr. Sakhai performed brain surgery on Mr. Foster in an effort to remove the tumor. The pathology report from St. Mary's Hospital in Huntington, where Dr. Sakhai performed the surgery, revealed that the tissue removed was not a cancerous tumor. According to Mrs. Foster, the report also indicated that the material had been removed not from the base of Mr. Foster's brain, but rather from one of the hemisphere's of his brain, which together are known as the cerebrum. Although the terms sound similar, the cerebellum, or base of the brain, the alleged location of the tumor shown on the MRI, is an entirely different area then the cerebrum, also called the brain's hemispheres, the area from which Dr. Sakhai allegedly removed the brain tissue.[1]

Immediately after the operation, all thought it to have been successful. However, Mr. Foster began to experience new symptoms. He complained of new and different vision problems, and claimed that he could no longer tell time, play the guitar, or recognize various familiar objects. After seeking a second opinion, Mr. Foster underwent a second operation on May 22, 1996, at Ohio State Medical Center. During that operation, another doctor removed a so-called metastatic renal cell tumor from Mr. Foster's brain. Because the tumor was metastatic, or one that would spread, Mr. Foster had to undergo radiation therapy.

As a result of the second surgery and the subsequent radiation treatment, Mr. Foster developed a number of complications and suffered various complaints, including continuing vision problems and difficulty reading and walking. On January 9, 1998, two years after the first operation, Mr. and Mrs. Foster filed the underlying medical malpractice action. Unfortunately, Mr. Foster's cancer treatments proved unavailing, and he died about two months later, on March 7, 1998,

---

1. Mrs. Foster's brief characterizes the operation as the mistaken removal of healthy brain tissue from the wrong area of the brain. Dr. Sakhai's brief characterizes the operation as being successful for a limited purpose, resulting in the removal of some "abnormal" tissue.

some twenty-six months after the operation performed by Dr. Sakhai.

The trial in the case began on July 17, 2000. Summarizing and somewhat simplifying the arguments of the parties, Mrs. Foster argued that Dr. Sakhai had operated on the wrong part of her husband's brain, removed healthy tissue, and thus required Mr. Foster to undergo a second operation that, absent Dr. Sakhai's mistake, should not have been necessary. As a result, she argued, Mr. Foster suffered various complications and problems that significantly reduced his ability to enjoy his final days. Dr. Sakhai argued, in essence, that he did not violate any standard of care in his operation on Mr. Foster, and that the problems Mr. Foster suffered, though unfortunate, resulted from the second operation in Ohio, or from uncontrollable, post-operative complications from the first surgery.

After four days of trial, the jury returned a verdict of $800,000 in favor of Mrs. Foster, granting $250,000 for pain in suffering, $200,000 for mental anguish, emotional distress and fright, and $350,000 for loss of enjoyment of life. The circuit court entered the judgment order on July 28, 2000, but allowed the parties to submit post trial motions. On September 29, 2000, the lower court granted Dr. Sakhai a new trial, overturning the jury's verdict. The order stated that the circuit court granted the new trial for two reasons.

> The Court finds that the comments by plaintiff's counsel during closing argument regarding the non-economic cap in medical malpractice cases, standing alone, warrants a new trial. The Court further finds the Jury Charge was at variance and confusing and, standing alone, warrants a new trial. Therefore, the Court GRANTS Defendant's Motion and ORDERS a new trial on liability and damages.

After entry of this order, Mrs. Foster appealed to this Court.

## II.

### STANDARD OF REVIEW

■ We have previously described the standard of review we apply to a case such as this:

We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*Tennant v. Marion Health Care Foundation,* 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995). However we have also explained that:

> Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.

Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.,* 159 W.Va. 621, 225 S.E.2d 218 (1976). *Accord, Stillwell v. The City of Wheeling,* 210 W. Va. 599, 604, 558 S.E.2d 598, 603 (2001); Syl. pt. 1, *Andrews v. Reynolds Mem'l Hosp., Inc.,* 201 W.Va. 624, 499 S.E.2d 846 (1997).

■ Although the standard when considering a court's granting of a new trial is abuse of discretion, we have cautioned that this discretion is not without limit: "Ordinarily, when a circuit court is afforded discretion in making a decision, this Court accords great deference to the lower court's determination. However, when we find that the lower court has abused its discretion, we will not hesitate to right the wrong that has been committed." *Rollyson v. Jordan,* 205 W.Va. 368, 379, 518 S.E.2d 372, 383 (1999). *Accord, Gribben v. Kirk,* 195 W.Va. 488, 500, 466 S.E.2d 147, 159 (1995). Or in other words: "We grant trial court judges wide latitude in conducting the business of their courts. However, this authority does not go unchecked, and a judge may not abuse the discretion granted him or her under our law." *Lipscomb v. Tucker County Com'n,* 206 W.Va. 627, 630, 527 S.E.2d 171, 174 (1999).

■ Furthermore, when we are asked to decide if a jury received the proper instructions in a given trial our review is *de novo.*

"As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the question of whether a jury was properly instructed is a question of law, and the review is *de novo.*" Syl. pt. 1, *State v. Hinkle,* 200 W.Va. 280, 489 S.E.2d 257 (1996).

## III.

## DISCUSSION

The lower court stated in its order that it granted the new trial for two reasons: the use of certain language by plaintiff's counsel during closing argument, and the particular phrasing of certain sections of the charge to the jury. We shall deal with each in turn, but before reaching those issues we must address a question raised by Dr. Sakhai.

## A.

### *Appealing an Order Granting a New Trial*

■ Dr. Sakhai argues that an order for a new trial is not the sort of order that may be appealed to this Court. In support of this contention, the appellant directs us to a change in the statute discussing appeals to this Court. The question of whether or not this Court has the authority to review an order granting a new trial implicates the basic powers of this Court. The West Virginia Constitution establishes those powers:

§ 1.  Judicial Power

The judicial power of the State shall be vested solely in a supreme court of appeals and in the circuit courts, and in such intermediate appellate courts and magistrate courts as shall be hereafter established by the legislature, and in the justices, judges and magistrates of such courts.

§ 3.  Supreme Court of Appeals; Jurisdiction and Powers; Officers and Employees; Terms

The supreme court of appeals shall have original jurisdiction of proceedings in habeas corpus, mandamus, prohibition and certiorari.

The court shall have appellate jurisdiction in civil cases at law where the matter in controversy, exclusive of interest and costs, is of greater value or amount than three hundred dollars . . . .

W. Va. Const. art. VIII, §§ 1, 3.[2] We believe that this Constitutional grant of authority has always permitted this Court to review orders of a lower court granting a new trial. Moreover, "It is the constitutional obligation of the judiciary to protect its own proper constitutional authority by upholding the independence of the judiciary." Syl. pt. 4, *State ex rel. Lambert v. Stephens,* 200 W.Va. 802, 490 S.E.2d 891 (1997).

■ We have also often discussed the inherent power of the Court: "A court 'has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction.' 14 Am. Juris. Courts, Section 171." Syl. pt. 3, *Shields v. Romine,* 122 W.Va. 639, 13 S.E.2d 16 (1940). We have repeatedly recognized this inherent power of the courts, and noted its application in a variety of settings:

The concept of the "inherent power" of the judiciary is well recognized in this jurisdiction. In Syllabus Point 3 of *Shields v. Romine,* 122 W.Va. 639, 13 S.E.2d 16 (1940), this Court noted the general rule

---

2. The Constitution also provides how a party initiates an action in the Supreme Court:

A writ of error, supersedeas or appeal shall be allowed by the supreme court of appeals, or a justice thereof, only upon a petition assigning error in the judgment or proceedings of a court and then only after the court, or a justice thereof, shall have examined and considered the record and is satisfied that there probably is error in the record, or that it presents a point proper for the consideration of the court. W. Va. Const. art. VIII, § 4. We have held that the power vested in this Court by the Constitution grants broad authority in conducting the business of all the courts:

Under Article VIII, Section 8 of the *Constitution of West Virginia* (commonly known as the Judicial Reorganization Amendment), administrative rules promulgated by the Supreme Court of Appeals of West Virginia have the force and effect of statutory law and operate to supersede any law that is in conflict with them. Syl. pt. 1, *Stern Brothers, Inc. v. McClure,* 160 W.Va. 567, 236 S.E.2d 222 (1977). *Accord, Bennett v. Warner,* 179 W.Va. 742, 372 S.E.2d 920 (1988); *Oak Cas. Ins. Co. v. Lechliter,* 206 W.Va. 349, 524 S.E.2d 704 (1999).

that, "A court 'has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction.' 14 Am. Juris., Courts, section 171." See also *Virginia Electric & Power Co. v. Haden*, 157 W.Va. 298, 306, 200 S.E.2d 848, 853 (1973); Syl. pt. 2, *Frazee Lumber Co. v. Haden*, 156 W.Va. 844, 197 S.E.2d 634 (1973). This Court has acknowledged inherent judicial powers in a variety of contexts at both the appellate and trial court levels.

*Daily Gazette v. Canady*, 175 W.Va. 249, 251, 332 S.E.2d 262, 264 (1985); *Accord, State ex rel. Crafton v. Burnside*, 207 W.Va. 74, 528 S.E.2d 768 (2000).[3] We believe that the inherent power of the judiciary also gives this Court the authority to hear the appeal of an order granting a new trial.

Prior to 1998, our code specifically acknowledged that the Court had this power. That section read:

**When appeal or writ of error lies.**

A party to a controversy in any circuit court may obtain from the supreme court of appeals, or a judge thereof in vacation, an appeal from, or a writ of error or supersedeas to, a judgment, decree or order of such circuit court in the following cases:

(a) In civil cases where the matter in controversy, exclusive of costs, is of greater value or amount than one hundred dollars, wherein there is a final judgment, decree or order;

(b) In controversies concerning the title or boundaries of land, the probate of a will, or the appointment of a personal representative, guardian, committee or curator;

(c) Concerning a mill, road, way, ferry, or landing;

(d) Concerning the right of a corporation, county, or district to levy tolls or taxes;

(e) In any case of quo warranto, habeas corpus, mandamus or prohibition;

(f) In any case involving freedom or the constitutionality of a law;

(g) In any case in chancery wherein there is a decree or order dissolving or refusing to dissolve an injunction, or requiring money to be paid, or real estate to be sold, or the possession or title of property to be changed, or adjudicating the principles of the cause;

(h) In any case where there is a judgment or order quashing or abating or refusing to quash or abate an attachment;

*(i) In any civil case where there is an order granting a new trial or rehearing, and in such cases an appeal may be taken from the order without waiting for the new trial or rehearing to be had;*

(j) In any criminal case where there has been a conviction in a circuit court or a conviction in an inferior court which has been affirmed in a circuit court.

Appeals shall not lie under subdivisions (g), (h) and (i) where pecuniary interests only are involved, unless the amount in controversy, exclusive of costs, exceeds one hundred dollars.

W. Va.Code § 58–5–1 (1925) (emphasis added). In 1998, the Legislature made major changes to this statute, eliminating the laundry list of items subject to appeal. The statute now reads:

A party to a civil action may appeal to the supreme court of appeals from a final judgment of any circuit court or from an order of any circuit court constituting a final judgment as to one or more but fewer than all claims or parties upon an express determination by the circuit court that there is no just reason for delay and upon an express direction for the entry of judgment as to such claims or parties. The

---

**3.** We have ruled, in a number of cases, that the constitutional power and inherent power of the judiciary prevent another branch of government from usurping the Court's authority. *See, e.g., State ex rel. Brotherton v. Blankenship*, 157 W.Va. 100, 207 S.E.2d 421 (1973) (where the Court found that the judicial branch has inherent power to set its own budget); *Robertson v. Hatcher*, 148 W.Va. 239, 135 S.E.2d 675 (1964) (where

the Court found that it is the obligation of the judiciary to determine independently if an unconstitutional provision of a statute may be severed from the rest of the statute); *State ex rel. Lambert v. Stephens*, 200 W.Va. 802, 490 S.E.2d 891 (1997) (where the Court found that the judiciary must, *a fortiori*, have control over its own administrative business in order to maintain its independence).

defendant in a criminal action may appeal to the supreme court of appeals from a final judgment of any circuit court in which there has been a conviction or which affirms a conviction obtained in an inferior court.

W. Va.Code § 58–5–1 (1998). Appellant's argument is that the new statute does not permit the appeal of an order granting a new trial. Focusing on the term "final judgment" in the statute, appellant points us to language in one of our earlier cases, to wit: "[W]hen a trial judge vacates a jury verdict and grants a new trial, he or she does not enter a final judgment." *Gonzalez v. Conley*, 199 W.Va. 288, 292, 484 S.E.2d 171, 175 (1997) (footnote omitted) (*per curiam*). While this language, read with the changed statute, could be construed to mean what appellant suggests, we must disagree.[4]

We acknowledge that many of our prior cases discuss when a judgment is "final" or whether a particular action of a circuit court may be considered a "final judgment." *See, e.g., James M.B. v. Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16 (1995) ("A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined."); *Coleman v. Sopher*, 201 W.Va. 588, 499 S.E.2d 592 (1997) ("order granting a new trial is interlocutory and destroys the finality of the judgment."); *Gonzalez v. Conley*, supra.[5]

However, we hasten to point out that most all of these cases were authored when the old version of the statute was in effect and when this Court's power to hear an appeal of an order granting a new trial was not only unchallenged, but was specifically acknowledged by statute. Moreover, because there was no question whatsoever that this Court could hear such an appeal, the Court never had occasion to examine an order granting a new trial to determine if such an order was a so-called final judgment *for the purposes of appealing the same.* It simply went without saying that a party aggrieved by the granting of a new trial could appeal directly to this

---

4. It is important to examine this quotation from *Gonzalez* in its proper context. In that case the Court was discussing the difference between vacating a judgment and entering a judgment notwithstanding the verdict, versus vacating a judgment and awarding a new trial.

> When a trial judge vacates the jury verdict by entering judgment notwithstanding the verdict, the trial judge is entering a final judgment which ends litigation on the issue upon which judgment has been entered.... Conversely, when a trial judge vacates a jury verdict and grants a new trial, he or she does not enter a final judgment.

*Gonzalez*, 199 W.Va. at 291–92, 484 S.E.2d at 174–75. The point made by the Court was that the trial judge (who had vacated a defense verdict, ruled the defendant negligent as a matter of law, and ordered a new trial for damages only) had used the wrong standard of review. To make that point, the opinion in *Gonzalez* explained that, quite clearly, entering a judgment notwithstanding the verdict and ordering a new trial for damages carries more finality than simply awarding a new trial.

5. We did, quite recently, discuss whether or not a judgment was "final" after a judge granted a new trial. However, the question of whether an order granting a new trial was appealable was not before this Court. In the case of *Taylor v. Elkins Home Show, Inc.*, 210 W. Va. 612, 558 S.E.2d 611 (2001), the plaintiff had won a jury verdict on August 18, 1999, and the defendant

(Elkins Home Show, Inc.) filed a renewed motion for judgment as a matter of law. On October, 18, 1999, the circuit court denied that motion, but instead granted the defendant a new trial. On May 24, 2000, before the new trial could take place, the defendant made another motion for judgment as a matter of law, which the court granted. The plaintiffs appealed and complained that the lower court had no jurisdiction to consider the final motion. We affirmed and explained:

> [A]t the time Elkins Home Show made its May 24, 2000 motion, there was no standing judgment order. Accepting that the September 3, 1999 Jury Verdict order was the entry of judgment, the circuit court subsequently granted a new trial. "An order granting a new trial is interlocutory and destroys the finality of the judgment." *Coleman v. Sopher*, 201 W.Va. 588, 605, 499 S.E.2d 592, 609 (1997), quoting 12 James Wm. Moore et al., Moore's Federal Practice, § 59.43[1] (3d ed.1997) (citations omitted). Because there was no final judgment at the time Elkins Home Show filed its second renewed motion, the motion could not have been untimely.

*Taylor v. Elkins Home Show, Inc.*, 210 W. Va. 612, 558 S.E.2d 611 (2001). While we did describe the grant of a new trial as leaving the plaintiffs without a "final judgment" we did not address whether or not that order was appealable.

Court without waiting for the new trial to be had.

In order to accept appellant's argument that the new statutory language strips this Court of its traditional review of orders awarding new trials, we would have to believe that the Legislature specifically intended to accomplish this. We have noted that: "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Compensation Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). *Accord, West Virginia Health Care Cost Review Auth. v. Boone Memorial Hosp.*, 196 W.Va. 326, 472 S.E.2d 411 (1996). When faced with a question, we may look to the Acts of the Legislature for guidance: "In construing an ambiguity in a statute, this Court will examine the title to the Act of the Legislature as a means of ascertaining the legislative intent, and the overall purpose of the legislation." Syl. pt. 2, *City of Huntington v. State Water Comm.*, 135 W.Va. 568, 64 S.E.2d 225 (1951).

When we examine the Acts for direction on the new version of the statute, we see that the Legislature stated that the legislation in question was an act,

> repealing provisions of law relating to appellate relief in the supreme court of appeals *which are outdated, archaic, or not in conformity with rules of appellate procedure* promulgated by the supreme court of appeals . . . .

1998 W. Va. Acts 110 (emphasis added). We see no evidence here that the Legislature intended a major departure from longstanding practice nor an intent to place a potentially unconstitutional limitation on the Court's powers.

Surely appellant would not argue that, because of the new language, this Court may no longer hear cases of quo warranto, habeas corpus, mandamus, or prohibition. To agree with appellant's argument would be to believe that the Legislature sought to strip this Court of not only the right to hear an appeal of a new trial order, but also of our original jurisdiction in its entirety. We simply cannot leap to that conclusion.[6]

Finally, we also look to the logic of allowing the appeal of such orders. It is clear that repeated attempts to interrupt a trial or lengthen a court battle by frequent interlocutory appeals is not permissible. If our appellate process is too indulgent, parties who might benefit from delay could drag out litigation indefinitely. By the same token, we do not wish to mistakenly promote delay in the name of judicial economy.

Trials are enormously expensive undertakings and, depending on the docket of a given circuit court, there can be lengthy delays before the parties can get a trial date. While appealing a decision to this Court is not a brief process (this appeal taking about fourteen months), an appeal is often, if not usually, less expensive and less time consuming than conducting a new trial. There is also a hard to quantify emotional toll taken on the participants in undergoing a new trial, both plaintiff and defendant. One must add to

**6.** Another indication that the Legislature wished to harmonize this provision with longstanding practice would be the inclusion of the following language:

> . . . or from an order of any circuit court constituting a final judgment as to one or more but fewer than all claims or parties upon an express determination by the circuit court that there is no just reason for delay and upon an express direction for the entry of judgment as to such claims or parties. . . .

This language closely mirrors Rule 54(b) of the Rules of Civil Procedure:

> . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. . . .

W. Va. R. Civ. P. 54(b). We also note that a reading of Rule 72 suggests that the Court may hear such an appeal:

> The full time for filing a petition for appeal commences to run and is to be computed from the entry of any of the following orders made upon a timely motion under such rules: granting or denying a motion for judgment under Rule 50(b); or granting or denying a motion under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion were granted; or granting or denying a motion under Rule 59 to alter or amend the judgment; *or granting or denying a motion for a new trial under Rule 59.*

W. Va. R. Civ. P. 72 (emphasis added).

these calculations the fact that in many instances, as in this case, the appellate court will overturn the grant of a new trial, and thus make the entire second trial an expensive exercise in futility.

■ When we examine the logic of allowing the appeal in question, in light of the Court's constitutional authority, its inherent powers, and, to the extent we can discern it, the intent of the Legislature, we do not believe that W. Va.Code § 58–5–1 (1998) forecloses us from hearing the appeal of an order granting a new trial. Accordingly, we hold that one may appeal to this Court a circuit court's order granting a new trial and one may appeal such an order without waiting for the new trial to be had. To the extent that our previous cases such as *James M.B. v. Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16 (1995), *Coleman v. Sopher*, 201 W.Va. 588, 499 S.E.2d 592 (1997), and their progeny suggest otherwise, they are hereby distinguished.

### B.

### *Jury Charge*

■ The lower court stated that one reason for its award of a new trial was that the jury charge "was at variance and confusing." The apparent basis for this decision was the use of the word "may" in one instance where the appellee suggests the word "must" should have been used. The charge to the jury runs from page 80 to page 99 of the trial transcript and contains a great number of specific instructions, among them:

> It follows then, to recover from Dr. Sakhai, Mrs. Foster *must* prove, by a preponderance of the evidence, that Dr. Sakhai's negligence proximately caused Mr. Foster's injury. If, from a preponderance of the evidence, you find that Dr. Sakhai's treatment of Mr. Foster was not the proximate cause of the injury, then you *must* find for Dr. Sakhai. . . .

> If you find, by a preponderance of the evidence, that Mr. Foster's injury resulted from a proximate cause or causes over which Dr. Sakhai had no control or for which he is not responsible, your verdict *may* be for Dr. Sakhai.

(Trial Transcript Vol. IV, pp. 94–95) (emphasis added). The court found that the use of the word "may" rendered the whole charge invalid.

■ We have explained on several occasions that instructions given to the jury in the jury charge must be examined as a whole:

> The formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard. A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and fair to both parties.

Syl. pt. 6, *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995). We clarified in greater detail, in the context of a criminal case, that an appellate court should not be asked to review every word in every instruction in the jury charge:

> A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mislead by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy

Syl. pt. 4, *in part, State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). We do not wish to appear cynical, but we find it hard to imagine that any juror had such a firm and complete grasp upon the facts of the case, every word of the jury charge, and the Queen's English that he or she, upon hearing the word "may" saw a golden opportunity to treat Dr. Sakhai unfairly.

Much of our case law on this subject deals with a court's refusal to give a proffered instruction. In this case, the adequacy of the jury charge is at issue. As we noted previously: "As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion. By contrast, the

question of whether a jury was properly instructed is a question of law, and the review is *de novo.*" Syl. pt. 1, *State v. Hinkle,* 200 W.Va. 280, 489 S.E.2d 257 (1996). *Accord, Skaggs v. Elk Run Coal Co., Inc.,* 198 W.Va. 51, 63, 479 S.E.2d 561, 573 (1996) (citation omitted). So it is our duty to determine if the charge given by the judge "sufficiently instructed the jury so they understood the issues involved and were not mislead by the law." *Guthrie, supra.*

Presuming that the use of "may" instead of "must" constituted an error, a question we need not decide in this case, our next question would be to determine if that error were sufficient to merit a new trial. As we have stated in the context of a criminal appeal: "An erroneous instruction requires a new trial *unless the error is harmless.*" *State v. Miller,* 197 W.Va. 588, 607, 476 S.E.2d 535, 554 (1996) (emphasis added).[7] In the civil context, we have examined what analysis a judge should perform when determining whether a given error is harmless:

> [I]n *Skaggs,* 198 W.Va. at 70–71, 479 S.E.2d at 580–81, we "direct[ed] reviewing judges to inquire, when determining whether an alleged error is harmless, *whether they are in 'grave doubt about the likely effect of an error on the jury's verdict,'* O'Neal [*v. McAninch* ] 513 U.S. [432,] 435, 115 S.Ct. [992,] 994, 130 L.Ed.2d [947,] 951 [ (1995) ]; *if a court does have grave doubt, then the error is harmful.*"

*Kessel v. Leavitt,* 204 W.Va. 95, 145, 511 S.E.2d 720, 770 (1998), *cert. denied,* 525 U.S. 1142, 119 S.Ct. 1035, 143 L.Ed.2d 43 (1999) (emphasis added).

When we examine the charge as a whole, as we must, we do not come to the same conclusion as the circuit court. While every word of the jury charge is indeed important,

we do not feel that the substitution of the word "may" for the word "must" in this one instance should have, in the eyes of the circuit judge, cast "grave doubt about the likely effect of an error on the jury's verdict." We find that, if any error occurred in using the word "may" in place of "must" in this case, that error was harmless. Ours is not so delicate a system that such an error can bring the whole process to its knees.

## C.

### *Closing Argument*

■■■■ The lower court ruled that certain remarks made by appellant's counsel during closing argument were grounds for the grant of a new trial. Specifically, counsel stated:

> The vision would certainly be included in loss of enjoyment of life, mental anguish, the fright he had to go through with the second surgery, and the Court has instructed that whatever those items you have, a million dollars is the total. It cannot be above a million dollars, so that's the target . . . .

(Trial Transcript Vol. IV, pp. 150–51). The judge found that this comment about the damages cap demanded a new trial. First we note that:

> The discretion of the trial court in ruling on the propriety of argument by counsel before the jury will not be interfered with by the appellate court, unless it appears that the rights of the complaining party have been prejudiced, or that manifest injustice resulted therefrom.

Syl. pt, 3, *State v. Boggs,* 103 W.Va. 641, 138 S.E. 321 (1927). We also point out that: "Mistrials in civil cases are generally regard-

---

**7.** We stated in *Miller:*

> In general, the question on review of the sufficiency of jury instructions is whether the instructions as a whole were sufficient to inform the jury correctly of the particular law and the theory of defense. We ask whether: (1) the instructions adequately stated the law and provided the jury with an ample understanding of the law, (2) the instructions as a whole fairly and adequately treated the evidentiary issues and defenses raised by the parties, (3) the instructions were a correct statement of

the law regarding the elements of the offense, and (4) the instructions meaningfully conveyed to the jury the correct burdens of proof. Thus, a jury instruction is erroneous if it has a reasonable potential to mislead the jury as to the correct legal principle or does not adequately inform the jury on the law. An erroneous instruction requires a new trial unless the error is harmless.

> *State v. Miller,* 197 W.Va. 588, 607, 476 S.E.2d 535, 554 (1996).

ed as the most drastic remedy and should be reserved for the most grievous error where prejudice cannot otherwise be removed." *Pasquale v. Ohio Power Co.*, 187 W.Va. 292, 296, 418 S.E.2d 738, 742 (1992).

The record shows that the judge had instructed the jury about the million dollar cap on non-economic loss with a detailed instruction:

There is no exact formula for placing a monetary value on such items as pain, suffering, loss of enjoyment of life, and mental anguish resulting from personal injuries or embarrassment due to his inability to read, focus, or see to the right. You are to affix the amount of just compensation of damages to the plaintiff for the pain, suffering, and mental anguish, and loss of enjoyment of life, if any, suffered by Mr. Foster due to his injury. These non-economic losses shall not exceed one million dollars.

(Trial Transcript Vol. IV, p. 97). Indeed, this mention of the million dollar cap was one of the last items in the lengthy jury charge. We are not faced here with a situation where an attorney has made a *per diem* argument, or pulled some figure from thin air. The only number mentioned was a number previously and recently mentioned by the court as a limit on damages. While we are concerned that counsel's remarks could potentially be interpreted as a suggestion that the million dollar figure was a floor, or required amount, we feel that the jury was adequately instructed to understand that the million dollar figure represented an absolute upper limit, and not a "target."

Conscious of the deference we owe the lower court's ruling, we believe that allowing this new trial to go forward on the basis of counsel's statements would result in the Fosters "hav[ing] been prejudiced" and would produce "manifest injustice." *State v. Boggs, supra.* Accordingly, we reverse the holding of the trial court on this issue.

### D.

#### *Appellee's Cross Assignments of Error*

■ Appellee makes numerous cross-assignments of error, which we shall address in turn. First appellee argued that the trial court should also have awarded a new trial because of comments made by plaintiff's counsel during closing argument in which he started to ask the jury to "send a message to Dr. Sakhai." Appellee argues that this utterance violated one of the trial court's *in limine* rulings.

At the pretrial conference the judge ruled that the plaintiff had a choice between dropping any claim for punitive damages or agreeing to a continuance. The plaintiff opted to abandon the punitive damages claim, and the trial court stated on several occasions to counsel that punitive damages were not at issue. The court also refused to grant the plaintiff/appellants's proffered jury instruction on punitive damages. During the very end of closing argument, plaintiff's counsel started to say, "[d]o something to send a message . . .," but was interrupted by defense counsel's objection. When allowed to continue, plaintiff's counsel again attempted to finish the same sentence, but was again interrupted by a second defense objection, which the judge sustained. We do not know what appellants's counsel would have said *in toto*, but appellee argues that the use of the phrase "send a message" improperly injected the issue of punitive damages into the case.

■ We recently considered when an alleged violation of a motion *in limine* might be cause for reversal:

A deliberate and intentional violation of a trial court's ruling on a motion *in limine*, and thereby the intentional introduction of prejudicial evidence into a trial, is a ground for reversing a jury's verdict. However, in order for a violation of a trial court's evidentiary ruling to serve as the basis for a new trial, the ruling must be specific in its prohibitions, and the violation must be clear.

Syl. pt. 5, *Honaker v. Mahon*, 210 W.Va. 53, 552 S.E.2d 788 (2001). We went on in that case to say:

In deciding whether to set aside a jury's verdict due to a party's violation of a trial court's ruling on a motion *in limine*, a court should consider whether the evidence excluded by the court's order was deliber-

ately introduced or solicited by the party, or whether the violation of the court's order was inadvertent. The violation of the court's ruling must have been reasonably calculated to cause, and probably did cause, the rendition of an improper judgment.

*Id.*, syl. pt. 6, *in part.* We do not believe that counsel's remarks were "reasonably calculated to cause, and probably did cause," the jury to enter an improper judgment in this case.

■ Next appellee argues that the jury's verdict was excessive and clearly based upon passion, prejudice or sympathy. We have long held that: "Courts must not set aside jury verdicts as excessive unless they are monstrous, enormous, at first blush beyond all measure, unreasonable, outrageous, and manifestly show jury passion, partiality, prejudice or corruption." Syl. pt. 1, *Addair v. Majestic Petroleum Co.,* 160 W.Va. 105, 232 S.E.2d 821 (1977); Syl. pt. 5, *Roberts v. Stevens Clinic Hosp., Inc.,* 176 W.Va. 492, 345 S.E.2d 791 (1986); Syl pt, 3, *Adkins v. Foster,* 187 W.Va. 730, 421 S.E.2d 271 (1992).

In this case, the appellant offered evidence that Mr. Foster had to undergo a second operation on his brain, and that he suffered numerous and serious limitations on his ability to read, see, walk, or generally enjoy his life and his family. We have noted:

There is and there can be no fixed basis, table, standard, or mathematical rule which will serve as an accurate index and guide to the establishment of damage awards for personal injuries. And it is equally plain that there is no measure by which the amount of pain and suffering endured by a particular human can be calculated. No market place exists at which such malaise is bought and sold. A person can sell quantities of his blood, but there is no mart where the price of a voluntary subjection of oneself to pain and suffering is or can be fixed.

*Crum v. Ward,* 146 W.Va. 421, 429, 122 S.E.2d 18, 23–24 (1961) (quoting *Botta v. Brunner,* 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331 (1958)). It is not ours to calculate the price of Mr. Foster's malaise,

and we cannot say that the jury's verdict in this case was "monstrous," "unreasonable," or "outrageous." *Addair, supra.*

■ Appellee also maintains that the trial court erred by permitting appellant's counsel to argue that Dr. Sakhai engaged in a "cover-up." At the close of all the evidence, the court heard argument from counsel for each side on this issue, and after reflection and consideration, actually granted Dr. Sakhai's motion *in limine* to prohibit plaintiff's counsel from arguing to the jury that Dr. Sakhai "covered up" the alleged mistake. Defense counsel pressed the court to offer a cautionary instruction, but the court specifically chose not to give one, stating "I think for me to instruct the jury as to that issue would be to tilt the table, and I'm not going to do that." Trial Transcript Vol. IV at 74. Before the parties presented their evidence, plaintiff's counsel did claim that he would show evidence of a "cover up." We note that witnesses did disagree as to the information provided by Dr. Sakhai, and the specific communications he had with Mr. Foster regarding the first operation. We do not believe it was error for the trial judge to initially deny Dr. Sakhai's motion *in limine* on this issue.

■ Also Dr. Sakhai argues that the court should not have permitted plaintiff's expert to testify that Dr. Sakhai was negligent in the manner in which he operated on Mr. Foster, particularly regarding the way he "localized" or attempted to find Mr. Foster's brain tumor. Specifically, appellee claims that the plaintiff's expert had never performed the particular technique at issue. It is clear that the qualification of an expert witness is in the judge's discretion:

" " " "Whether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused." Point 5, syllabus, *Overton v. Fields,* 145 W.Va. 797 [117 S.E.2d 598 (1960) ].' Syllabus Point 4, *Hall v. Nello Teer Co.,* 157 W.Va. 582, 203 S.E.2d 145 (1974)." Syllabus Point 12, *Board of Education v. Zando, Martin & Milstead,* 182 W.Va. 597, 390 S.E.2d 796

(1990).' Syl. pt. 3, *Wilt v. Buracker*, 191 W.Va. 39, 443 S.E.2d 196 (1993)."

Syl. pt. 5, *Mayhorn v. Logan Medical Foundation*, 193 W.Va. 42, 454 S.E.2d 87 (1994). Dr. Sakhai argues that Mrs. Foster's expert has not operated on a patient for several years and that he never performed the specific procedure at issue.[8]

▮ We do agree with the appellee that: "[T]o qualify a witness as an expert on that standard of care, the party offering the witness must establish that the witness has more than a casual familiarity with the standard of care and treatment commonly practiced by physicians engaged in the defendant's specialty." *Gilman v. Choi*, 185 W.Va. 177, 181, 406 S.E.2d 200, 204 (1990). However, we also note that "a medical expert, otherwise qualified, is not barred from testifying merely because he or she is not *engaged in practice* as a specialist in the field about which his or her testimony is offered[.]" *Id.* (emphasis in original). Dr. Smith, who was the plaintiff's expert, was also a board certified neurological surgeon. We do not feel it was error to allow him to give an opinion concerning the way in which Dr. Sakhai performed the procedure in question.

▮ Finally, appellee argues that the verdict was against the clear weight of the evidence, and that a new trial should have been awarded based upon the cumulative effect of errors below. First we note that:

In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true.

▮ Syl. pt. 3, *Walker v. Monongahela Power Co.*, 147 W.Va. 825, 131 S.E.2d 736 (1963). We have also explained that:

In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

Syl. pt. 5, *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983); *accord, Pote v. Jarrell*, 186 W.Va. 369, 412 S.E.2d 770 (1991) (*per curiam*); *Pinnacle Mining v. Duncan Aircraft Sales*, 182 W.Va. 307, 387 S.E.2d 542 (1989); *Finley v. Norfolk and Western Ry. Co.*, 208 W.Va. 276, 540 S.E.2d 144 (1999) (*per curiam*). Finally, upon review, we must examine this case in a light favorable to Mrs. Foster:

When examining the record for the sufficiency of evidence to support the verdict, we view the evidence in the light most favorable to the prevailing party. We are not concerned with how we might decide the facts in the jury's stead, nor does our review favor the inferences and conflicts in the evidence helpful to the losing party.

*Dodrill v. Nationwide Mut. Ins. Co.*, 201 W.Va. 1, 11, 491 S.E.2d 1, 11 (1996). Bearing this authority in mind, we cannot conclude that the jury's verdict was, in any regard, against the clear weight of the evidence.

▮ Lastly, with respect to appellee's argument that a new trial should be awarded based upon the cumulative effect of errors below:

Although we recognize that the cumulative error doctrine may be used by a circuit

---

**8.** We have explained how a judge should arrive at this decision:

In determining who is an expert, a circuit court should conduct a two-step inquiry. First, a circuit court must determine whether the proposed expert (a) meets the minimal educational or experiential qualifications (b) in a field that is relevant to the subject under investigation (c) which will assist the trier of fact. Second, a circuit court must determine that the expert's area of expertise covers the particular opinion as to which the expert seeks to testify.

Syl. pt. 5, *Gentry v. Mangum*, 195 W.Va. 512, 466 S.E.2d 171 (1995); *Accord*, syl. pt 4, *Watson v. Inco Alloys Intern., Inc.*, 209 W.Va. 234, 545 S.E.2d 294 (2001).

court in situations where there are numerous "harmless" errors, as we have frequently noted, the doctrine should be used sparingly. Furthermore, "if the errors . . . are insignificant and inconsequential, the case should not be reversed under this rule." I Franklin D. Cleckley, *Handbook on Evidence* § 1–7(B)(5) at 49. *Tennant v. Marion Health Care Found., Inc.*, 194 W.Va. 97, 118, 459 S.E.2d 374, 395 (1995). Even if we were to take a generous view of the various items alleged as error by appellee, we do not find that there has been error sufficient to merit the award of a new trial.

### IV.

### CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Cabell County is reversed and remanded for the reinstatement of the jury's verdict.

Reversed and remanded.

Justices DAVIS and MAYNARD concur, in part, and dissent, in part, and reserve the right to file separate opinions.

DAVIS, Justice, concurring in part and dissenting in part.

Two of the three rulings in the majority opinion are simply wrong. Therefore, I concur in part and dissent in part. Before discussing the grounds upon which I dissent, I note that the defendant in this case, Dr. Hossein Sakhai, initially argued that this appeal should be denied because it was appealed from an order granting a new trial, which was not a "final order" for appeal purposes. The majority opinion has disagreed and, based upon this Court's constitutional authority, determined that an order granting a new trial, while interlocutory, is an appealable order. I concur with the majority opinion on this procedural issue. However, I depart from the majority with respect to its resolution of two substantive issues raised by this appeal.

The trial court granted a new trial to Dr. Sakhai on the ground that counsel for the plaintiff improperly stated a damage "target" amount to the jury during closing arguments. The majority opinion concluded that the trial court committed error in granting a new trial. Additionally, Dr. Sakhai filed a cross-

appeal arguing that the trial court should have granted his new trial based upon remarks by counsel for the plaintiff that were violative of a motion in limine. The majority opinion rejected this argument by Dr. Sakhai. I dissent from the latter two rulings by the majority opinion. In rendering its decision, the majority opinion has manipulated long-standing principles of law to reinstate the jury verdict in this case.

### A. Counsel for Plaintiff Improperly Stated a Damage Target Amount to the Jury During Closing Arguments

Dr. Sakhai argued that the trial judge was correct in granting a new trial because counsel for the plaintiff improperly stated that a million dollars for noneconomic damages was the "target" amount for the jury. The majority opinion rejected the argument after concluding "that the jury was adequately instructed to understand that the million dollar figure represented an absolute upper limit, and not a 'target.'" This conclusion by the majority opinion is wrong. Furthermore, the majority opinion distorted what actually occurred.

To begin, counsel for the plaintiff made the following statement to the jury during closing arguments:

> Counsel for Plaintiff: The vision would certainly be included in loss of enjoyment of life, mental anguish, the fright he had to go through with the second surgery, and the Court has instructed that whatever those items you have, a million dollars is the total. It cannot be above a million dollars, *so that's the target* [.]

(Emphasis added). Clearly, counsel for plaintiff went beyond the trial court's instruction and informed the jury that a million dollars was the "target."

Immediately after plaintiff's counsel concluded his closing argument, defense counsel moved for a mistrial. The following exchange occurred at the bench.

> Judge: Well, I'm not going to declare a mistrial. I may have to take this up in— What concerned me, quite frankly, more was the discussion of the statutory limit of a million dollars and saying, "That's the

target." That suggests an amount, and that does bother me.

Counsel for Plaintiff: Did I say, "That's the target."?

Judge: Yes, you did.

Counsel for Plaintiff: Did I correct it? Did I not—

Judge: No. You didn't correct it.

The evidence illustrates that counsel for the plaintiff misstated the trial judge's instruction on the million dollar cap and informed the jury that the sum was the "target." Counsel for the plaintiff even tried to argue that he was not aware that he spoke those words and questioned whether he clarified his words to the jury. In spite of the blatant evidence of what actually took place, the majority opinion concluded that counsel for the plaintiff did not state a "target" amount for the jury. I simply cannot accept the majority's decision to distort the record in order to reinstate a plaintiff verdict.

Our law is clear. Stating a target amount for a jury to return for noneconomic damages is "reversible error where the verdict is obviously influenced by such statement." Syl. pt. 7, in part, *Bennett v. 3 C Coal Co.*, 180 W.Va. 665, 379 S.E.2d 388 (1989). In the instant case, the trial court denied the motion for mistrial because it wanted to see if the improper target statement had prejudiced the jury. After the jury returned a verdict of $800,000, the trial court recognized that the remark was prejudicial and therefore granted the motion for a new trial. The trial court's decision was consistent with the law in this state and should not have been reversed.

In a case filed this term, *Lamphere v. Consolidated Rail Corporation*, 210 W.Va. 303, 557 S.E.2d 357 (2001) (per curiam), this Court affirmed the decision of the trial judge in granting a new trial to the *plaintiff* after the jury returned a defense verdict. In affirming the trial court's decision in *Lamphere*, we recognized in syllabus point 1 of the opinion the longstanding principle of law that " '[a] trial judge's decision to award a new trial is not subject to appellate review unless the trial judge abuses his or her discretion." ' Quoting Syl. pt. 3, in part, *In re* State Pub. Bldg. Asbestos Litig., 193 W.Va. 119, 454 S.E.2d 413 (1994). *See also Lively v. Rufus*, 207 W.Va. 436, 440–441, 533 S.E.2d 662, 666–667 (2000); *Tennant v. Marion Health Care Foundation*, 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995); Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976). No abuse of discretion was shown in the instant proceeding to justify the majority's decision to reverse the new trial awarded in this case.

### B. Counsel for the Plaintiff Violated a Motion In Limine Ruling by the Trial Judge

Prior to the trial in this case, the circuit court granted a motion in limine tendered by Dr. Sakhai. The motion in limine precluded any evidence or discussion to the jury regarding punitive damages. As grounds for his cross-appeal, Dr. Sakhai argued that the motion in limine order was violated. Consequently, the trial court should have granted his motion for a new trial. The majority opinion, after distorting what took place at trial, concluded that no basis existed for granting a new trial on this ground.

A review of the actual violation of the motion in limine order clearly established that a new trial should have been granted. The following occurred during closing argument by counsel for plaintiff.

Counsel for Plaintiff: Do something in this case to compensate the Foster family. Do something to send a message—

Counsel for Defendant: Objection.

Judge: Your objection?

Counsel for Defendant: It is a "send a message."

Counsel for Plaintiff: May I finish?

Judge: Yes, but if you're going to finish the sentence, don't pause in the middle of it quite so long.

Counsel for Plaintiff: Do something— Compensate the Foster family and do something [to] send the message to Dr. Sakhai.

Counsel for Defendant: Objection, Your Honor.

Judge: Sustained. That's improper.

Clearly, counsel for plaintiff violated the motion in limine order by expressly suggesting to the jury to return a verdict that "would send a message."

On May 25, 2001, this Court filed the opinion of *Honaker v. Mahon*, 210 W.Va. 53, 552 S.E.2d 788 (2001). *Honaker* carved out principles of law relating to motions in limine. In *Honaker*, the plaintiff appealed an adverse jury verdict. One issue presented by the plaintiff on appeal was that the defendant introduced evidence in violation of the trial judge's ruling on a motion in limine. This Court crafted two syllabus points on the issue of a violation of a motion in limine order:

5. A deliberate and intentional violation of a trial court's ruling on a motion in limine, and thereby the intentional introduction of prejudicial evidence into a trial, is a ground for reversing a jury's verdict. However, in order for a violation of a trial court's evidentiary ruling to serve as the basis for a new trial, the ruling must be specific in its prohibitions, and the violation must be clear.

6. In deciding whether to set aside a jury's verdict due to a party's violation of a trial court's ruling on a motion in limine, a court should consider whether the evidence excluded by the court's order was deliberately introduced or solicited by the party, or whether the violation of the court's order was inadvertent. The violation of the court's ruling must have been reasonably calculated to cause, and probably did cause, the rendition of an improper judgment. A court should also consider the inflammatory nature of the violation such that a substantial right of the party seeking to set side the jury's verdict was prejudiced, and the likelihood that the violation created jury confusion, wasted the jury's

time on collateral issues, or otherwise wasted scarce judicial resources. The court may also consider whether the violation could have been cured by a jury instruction to disregard the challenged evidence.

Syl. pts. 5 & 6, *Honaker*. In *Honaker*, we applied the above principles and reversed the adverse jury verdict and granted the plaintiff a new trial.

In the instant proceeding, Dr. Sakhai, as a *defendant*, now seeks the protection of *Honaker*. The majority opinion denied to Dr. Sakhai the well-reasoned principles of *Honaker*. Clearly, Dr. Sakhai has satisfied *Honaker*. The trial court issued a motion in limine order precluding evidence or argument to the jury on the issue of punishing Dr. Sakhai with a punitive verdict. Counsel for the plaintiff not only once, *but twice*, violated that order. The jury returned a verdict in an amount that can only be justified as punitive. In spite of this, the majority opinion has concluded that Dr. Sakhai, as a defendant, is not entitled to the benefits of *Honaker*. Our law must apply with equal force to both plaintiffs and defendants. We should not have two sets of rules—one set of rules for plaintiffs and a different set of rules for defendants.

Based upon the foregoing, I respectfully concur in part and dissent in part. I am authorized to state that Justice MAYNARD joins me in this concurring and dissenting opinion.